QUADRANGLE DEVELOPMENT CORPORATION, QDC Property Management Company, Appellants,

v.

OTIS ELEVATOR COMPANY, Appellee.

No. 99–CV–407.

District of Columbia Court of Appeals.

Argued March 8, 2000.

Decided April 13, 2000.

Francis H. Foley for appellants.

D'Ana E. Johnson, with whom George B. Breen, Washington, DC, was on the brief, for appellee.

Before REID and WASHINGTON, Associate Judges, and KING, Senior Judge.

WASHINGTON, Associate Judge:

■ The plaintiff in this litigation sustained injuries as a result of falling into a mis-leveled elevator. She brought a negligence action against the appellants, Quadrangle Development Corporation ("Quadrangle") and QDC Property Management Company ("QDC"), and the appellee, Otis Elevator Company ("Otis"). A jury found all three negligent. The principal issue on appeal is whether the trial court erred in entering judgment in favor of Otis on Quadrangle and QDC's cross-claim for indemnification. We affirm.[1]

---

1. Quadrangle and QDC also argue that they are entitled to recover attorneys' fees and expenses. However, Quadrangle and QDC are not entitled to recover attorneys' fees and

## I.

On Friday, May 1, 1999, elevator number five had mis-leveled in an office building located at 1919 Pennsylvania Avenue, N.W. An Otis mechanic had worked on the elevator until 7:00 p.m. before leaving for the evening. At approximately 7:00 a.m., on May 4, 1999, the Quadrangle building engineer reported in his daily log that he inspected the premises. At 9:00 a.m., he made a notation that elevator number five was not leveling and that Otis' mechanic was working on it. At approximately 9:30 a.m., Jennifer Thomas, the plaintiff below, waited for an elevator in the lobby. When the doors to elevator number five opened, Thomas stepped forward and fell into the mis-leveled elevator.

Quadrangle's building mechanic testified during trial that it was Otis' practice to lock down the elevator when repairing mis-leveling elevators. However, Otis conceded that the mechanic did not follow the company's protocol. Thomas' expert witness testified that the building manager, aware that the elevator was not level, should have put barriers in front of it or should have taken steps to restrict access of the public to elevator number five. Employees of building management testified that barricades and yellow tape were available on site, and that they had previously used barricades, tape, and signs to warn and alert the public that an elevator was not working properly and to restrict access to the elevator. Furthermore, Quadrangle's building mechanic testified that it was the practice of Quadrangle to tape off the door of the elevator and set out barricades when there was a potential for danger to the public.

A jury found Quadrangle, QDC, and Otis jointly and severally liable and awarded Thomas damages in the amount of $350,000. At the conclusion of the trial, Quadrangle and QDC requested judgment on the cross-claim against Otis for indemnification. The request for indemnification was denied based on the jury's finding in favor of Thomas and against Quadrangle, QDC, and Otis. Quadrangle, QDC, and Otis moved for post-trial relief from the judgment entered in favor of Thomas. Otis also requested that the trial court enter judgment in its favor on the cross-claim of Quadrangle and QDC for indemnification. The trial court denied all post-trial motions as to the verdict entered in favor of Thomas. In a separate order, the trial court dismissed with prejudice Quadrangle and QDC's cross-claims against Otis for the reasons stated in the memorandum of Otis. Quadrangle and QDC timely appealed the denial of their request for indemnification.

## II.

Quadrangle and QDC challenge the trial court's refusal to order Otis to indemnify them for their share of liability for Thomas' injuries. Quadrangle and QDC specifically argue that they are entitled to indemnification[2] because Thomas' injuries were caused by the direct negligence of Otis in failing to lock down the elevator on which its mechanic was working. In other words, because Quadrangle and QDC had reason to believe that the elevator was not accessible to the public due to Otis' practice of locking down elevators in repair, they were not negligent in failing to put up warnings and barricades.[3]

expenses where they were defending allegations of their own negligence and where we hold that they are not entitled to indemnification. *Safeway Stores, Inc. v. Chamberlain Protective Servs., Inc.*, 451 A.2d 66 (D.C.1982).

**2.** Quadrangle and QDC concede that the contract they had with Otis did not contain any express indemnification provision. Therefore, their claim is one of implied indemnification, based on equitable principles.

**3.** Quadrangle and QDC base their argument on a notation in the building engineer's log that at 9:00 a.m. the Otis mechanic was working on the leveling of elevator number five. However, the log notation alone is ambiguous with respect to whether the Otis mechanic had assumed control over the mis-leveled elevator, thus alleviating Quadrangle and QDC of the responsibility to warn the public.

■ A duty to indemnify may arise from an express contract provision or, in the absence of a contract, where indemnification is required to prevent injustice. *East Penn Mfg. Co. v. Pineda,* 578 A.2d 1113, 1126 (D.C.1990). Where there is no express contract provision, an obligation to indemnify may be implied in fact on an implied contract theory or implied in law in order to achieve equitable results. *Id.* at 1127 n. 20. We have accepted the following articulation of the concept of indemnity:

> Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnify has been recognized in cases where the equities have supported it. A court's view of the equities may have been based on the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct.

*District of Columbia v. Washington Hosp. Center,* 722 A.2d 332, 339 (D.C.1998) (citing *R. & G. Orthopedic Appliances & Prosthetics, Inc. v. Curtin,* 596 A.2d 530, 545 (D.C.1991) (quoting *East Penn,* 578 A.2d at 1128 n. 20) (quoting W. PROSSER & R. KEETON, THE LAW OF TORTS, § 51, at 344 (1984))). The basis for indemnity is restitution, *East Penn,* 578 A.2d at 1127, generally involving the "shifting of the entire loss from one who has paid it to another who would be unjustly enriched at the indemnitee's expense by the indemnitee's discharge of the obligation." *Washington Hosp. Center,* 722 A.2d at 340 (citing *R. & G. Orthopedic,* 596 A.2d at 545 (quoting *East Penn,* 578 A.2d at 1128 n. 20 (citation omitted))). Furthermore, indemnity is "restricted generally to situations where the indemnitee's conduct was not as blameworthy as that of the indemnitor" when based upon equitable principles. *Id.* (citing *R. & G. Orthopedic,* 596 A.2d at 546).

■ In "implied in law," or "equitable" indemnity, "the obligation is based on variations in the relative degrees of fault of joint tortfeasors, and the assumption that when the parties are not *in pari delicto,* the traditional view that no wrongdoer may recover from another may compel inequitable and harsh results." *East Penn,* 578 A.2d at 1127 n. 20 (citing RESTATEMENT (SECOND) OF TORTS, *supra,* § 886B comment *a* (further citations omitted)). A duty to indemnify may also be implied "out of a relationship between the parties," to prevent a result "which is regarded as unjust or unsatisfactory." *Myco, Inc. v. Super Concrete Co., Inc.,* 565 A.2d 293, 297 (D.C.1989). This concept "is based on the well-established theory that if one [tortfeasor] breaches a duty owed to another and the breach causes injury, the former should compensate the latter." *Id.* at 298. "In order to establish the right to this particular type of implied indemnity, the obligation must arise out of a specific duty of defined nature—separate from the injury to the [plaintiff]—owed to the third party ....," and there must also be a special legal relationship between the tortfeasors. *Id.* at 299 n. 8.[4] Furthermore, where both joint tortfeasors are guilty of active negligence, and the negligence of both concur in causing the injury, neither is entitled to indemnity against the other. *R. & G. Orthopedic,* 596 A.2d at 547–48; *see also Washington Hosp. Center,* 722

---

4. This "independent duty" formulation of implied indemnity has been criticized because the terms "independent duty" and "special relationships" are indefinite and thus questionable as rules of general application or guideposts to when indemnity should be awarded. *East Penn,* 578 A.2d at 1127 n. 20. "It is sometimes said that a right to indemnity arises when the indemnitor ow[e]s an independent duty to the indemnitee. This may prove to be nothing more than a way of stating the problem (when is a duty owed?)." *Id.* at 1127 n. 20 (quoting RESTATEMENT (SECOND) OF TORTS, *supra,* § 886B comment *c* ). Furthermore, such notions as "independent duties" and "special relationships" as rules of general application may "simply obfuscate what ultimately is a principle of equity ...." *Id.*

A.2d at 341; *Early Settlers Ins. Co. v. Schweid,* 221 A.2d 920, 923 (D.C.1966).

 Quadrangle and QDC argue that they are entitled to indemnification as a result of their relationship with Otis.[5] However, there is nothing in the service agreement or under the duties owed to one another that would lead us to conclude that Otis should indemnify Quadrangle and QDC to prevent an unjust result. Under the terms of their service contract, Otis owed Quadrangle and QDC a duty to properly maintain and repair the elevators. If Otis' failure to repair the elevator had resulted in Thomas' injuries, Quadrangle and QDC would arguably be entitled to indemnification because Otis breached a duty owed to Quadrangle and QDC to repair the elevator, and this breach caused the injury. Here, Thomas' injuries were not the result of Otis' failure to repair the elevator but were the result of Quadrangle and QDC's failure to warn the public of the mis-leveled elevator and Otis' failure to prevent public access into the elevator.

Furthermore, the evidence demonstrated that Quadrangle and QDC retained control of the elevators, the right to shut down elevators that were not working properly, and the right to determine when Otis could remove an elevator from service. The evidence also showed that Quadrangle and QDC had previously exercised their right to shut the doors, lock the elevator, place tape across the doors or to place barricades to prevent persons from accessing the elevator, and alert and warn the public that the elevator was not available for service. Therefore, Quadrangle, QDC, and Otis were joint tortfeasors guilty of active negligence which concurred in Thomas' injuries. Quadrangle and QDC were actively negligent in failing to put up barricades and signs when it became aware of the mis-leveled elevator, contrary to its usual practice. Otis was also actively negligent in failing to lock down the elevator, thus violating its policy. Both acts of negligence resulted in Thomas' injuries. Furthermore, the jury found Quadrangle, QDC, and Otis jointly and severally liable for negligence. We cannot therefore conclude that Quadrangle and QDC are entitled to indemnification.[6]

*Affirmed.*

---

5. Quadrangle and QDC also argue that they are entitled to indemnification from Otis under a theory of active-passive negligence. However, we have rejected the "active/passive" theory of implied indemnity. *National Health Laboratories, Inc. v. Ahmadi,* 596 A.2d 555, 558 (D.C.1991); *Myco,* 565 A.2d at 298–99; *East Penn,* 578 A.2d at 1127 n. 20.

6. Quadrangle and QDC rely on *Mas v. Two Bridges Associates,* 75 N.Y.2d 680, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990), and *Jones v. Otis Elevator Co.,* 861 F.2d 655 (1988) as support for their position that they are entitled to indemnification. We find neither case to be persuasive. *Mas* concerned liability for a failure to maintain the elevator, not a failure to warn. Therefore, the court granted the building owner indemnity from the elevator company because the duty to maintain the elevator belonged to the elevator company. *Mas,* 75 N.Y.2d at 691, 555 N.Y.S.2d 669, 554

N.E.2d 1257. Furthermore, the injured party was already on the elevator when the elevator malfunctioned, unlike in this case where the elevator had already malfunctioned, but because of the failure to warn of the malfunction Thomas was injured. *Id.* at 685, 555 N.Y.S.2d 669, 554 N.E.2d 1257. *Jones,* likewise, is distinguishable from this case. In *Jones,* the court granted indemnity to the building owner because its liability arose from its failure to discover a dangerous condition created or maintained by the elevator company. *Jones,* 861 F.2d at 664. Here, however, Quadrangle and QDC knew of the dangerous condition before Thomas stepped into the elevator. The court in *Jones* also granted indemnification under the "active/passive" theory of implied indemnity, a theory which we have rejected. *National Health Lab., supra* note 5, 596 A.2d at 558.