59 P.3d 112 (2002)
URBAN DEVELOPMENT, INC., a Washington corporation, Appellant,
v.
EVERGREEN BUILDING PRODUCTS, LLC; R & E Enterprises, Inc.; SDS, Inc.; Cox Wrought Iron & Fabrication, Inc.; EDCA Roofing, Inc., all Washington corporations, Respondents.
Urban Development, Inc., a Washington corporation, Appellant,
v.
Dryvit Systems, Inc., a Rhode Island corporation, Respondent.
Nos. 49355-8-I, 50137-2-I.
Court of Appeals of Washington, Division 1.
December 16, 2002.
As Amended January 17, 2003.
*115 John Patrick Hayes, Devon P. Groves, Forsberg & Umlauf, Seattle, for Urban Development.
Gordon Liu, Bellevue, Jeffrey Frank, Gregory Clark, Seattle, for Fortune Star Development.
Gordon Liu, Seattle, for C-Light, Wu Yi Corp., Chens, John & Mary Does 5-200.
Robert Goff, Seattle, for Forturn View Condominium.
William Allan Linton, Seattle, for Evergreen Building.
Betsy A. Gillaspy, Bellevue, for R & E Enterprises.
Joanne Thomas Blackburn, Elizabeth Kim, Seattle, for SDS, Inc.
Dirk Jonathan Muse, Steven Jager, Seattle, for Cox Wrought Inc.
Sherman Leslie Knight, Kirkland, for EDCA Roofing. *113
*114 ELLINGTON, J.
Urban Development, a general contractor, filed claims for implied indemnification, breach of warranty, and breach of contract against several subcontractors and a product manufacturer. Because Urban Development was not an intended beneficiary of any warranties made by the subcontractors, there is no basis for the indemnification claims against those parties, and those claims were properly dismissed. Urban Development was, however, entitled to the benefit of representations and warranties in the manufacturer's advertising brochures, and because questions of fact remain as to Urban Development's claims arising from those brochures, we reverse dismissal of the indemnification and breach of warranty claims against Dryvit Systems.
Questions of fact also remain about the breach of contract claims against subcontractors R & E Enterprises, Cox Wrought Iron, and EDCA Roofing, and those claims should not have been dismissed. The breach of contract claim against subcontractor SDS, however, was properly dismissed, as no genuine issues of material fact exist.

FACTS
Urban Development, Inc., a general contractor, was hired by Fortune Star Development Co. to construct the Fortune View Condominiums. Construction was completed on November 22, 1996. The condominium units began to crack and leak, and on October 21, 1999, the Fortune View Condominium Association filed suit against the developer, which filed a third-party claim against Urban Development. On October 3, 2000, Urban Development filed fourth-party claims against most of its subcontractors and product suppliers, alleging breach of contract, breach of warranty, negligent construction,[1] and implied indemnity.
These appeals arise from a series of orders granting summary judgment dismissing Urban Development's claims against the following subcontractors and product suppliers: SDS, Inc., which performed the framing work and window and sliding glass door installation; R & E Enterprises, Inc., which installed the deck waterproofing; Cox Wrought Iron & Fabrication, Inc., which fabricated and installed the handrails and fences; EDCA roofing, Inc., which installed the roofing membrane and metal parapet wall flashing; Dryvit, Inc., which manufactured the "exterior insulation and finish system" *116 that was installed on the exterior of the condominiums; and Evergreen Building Products, L.L.C., the successor-in-interest to Seattle Wall Systems, which sold the Dryvit siding system to the plastering subcontractor.[2]
The court dismissed Urban Development's implied indemnification claims against all six respondents. The court also dismissed Urban Development's warranty claim against Dryvit, and its breach of contract claims against R & E, Cox, EDCA, and SDS. Urban Development appeals.

DISCUSSION

Implied Indemnification
Urban Development alleges it is entitled to indemnification[3] from all six respondents. A right of implied contractual indemnity arises when one party incurs a liability the other party should discharge by virtue of the nature of the relationship between the parties.[4] Although the right to indemnity is not implicit in every contractual relationship,[5] a contract governed by the UCC, with its warranties, provides a sufficient basis for an implied indemnity claim.[6] Likewise, a relationship where one party has expressly warranted its goods to another party provides a sufficient basis for an implied indemnity claim.[7]
R & E Enterprises, Cox Wrought Iron, and EDCA Roofing. Urban Development's contracts with R & E, Cox, and EDCA were construction contracts for work, labor, and materials. Urban Development had direct relationships with R & E, Cox, and EDCA, and contends these relationships support its indemnification claims against them. But Urban Development's claims against these parties are founded upon a theory of UCC warranties. Construction contracts are not governed by the UCC.[8]
Even if RCW 62A.2 applied, there is no evidence in the record that these respondents breached any UCC warranties. Urban Development contends an architect's report describing damage to the condominiums raises questions of fact on this issue. The report does not allege, however, that any of the materials installed by R & E, Cox, or EDCA were defective. Rather, the authors opine that deck coating, guardrails, and metal flashing on the roof parapet were "improperly installed[.]"[9] Any implied UCC warranties on the sale of goods are therefore irrelevant, and cannot support Urban Development's indemnification claims against R & E, Cox, and EDCA. The trial court properly dismissed those claims on summary judgment.
SDS, Inc. It is undisputed that SDS provided only services to Urban Development. The UCC therefore does not apply to their contract, and UCC implied warranties cannot serve as the basis for an indemnification claim. Urban Development nevertheless contends it had a sufficient relationship with SDS to create such a warranty on the ground that all subcontractors "impliedly warrant that their work will be *117 done in a workmanlike manner in accordance with industry standards."[10]
Urban Development relies entirely upon Eastlake Construction Co., Inc. v. Hess.[11] The issue in Eastlake was whether a contractor's misrepresentations in a bid had an impact upon the public interest for purposes of the Consumer Protection Act (CPA).[12] In holding that misleading bids amounted to an unfair or deceptive act under the CPA, the Supreme Court noted that when a contractor submits a bid, "he is, in effect, representing that he will perform that job in a workmanlike manner[.]"[13]
Nothing in that case, or in any other Washington case, suggests that the warranty sought by Urban Development is implicit in construction contracts. Contracting parties have their remedies for breach and can negotiate for warranties if they so choose. An action for implied warranty of workmanlike performance in construction contracts would be strikingly similar to a cause of action for negligent construction, which is not recognized in Washington.[14] We hold that such warranties are not implicit in construction contracts, and cannot support Urban Development's indemnification claim against SDS.[15] The trial court properly dismissed the claim on summary judgment.
Evergreen & Dryvit. Urban Development had contracts with each of the subcontractors discussed above. In contrast, it had no contract with either Evergreen Building Products or Dryvit. Evergreen sold the Dryvit siding system to the plastering subcontractor, Wall Finishes (which has settled with Urban Development). Only Wall Finishes had a contract with Urban Development. Urban Development nevertheless contends it had a sufficient relationship with Evergreen and Dryvit to support indemnification claims against them based on warranties implied under the UCC. Urban Development also contends that it is the beneficiary of express warranties made in Dryvit's advertising materials, and that those express warranties are sufficient to support its indemnification claim against Dryvit.
Urban Development first asserts that "direct privity is not required ... to be a beneficiary of the UCC implied warranties."[16] For this proposition, Urban Development relies on Central Washington Refrigeration v. Barbee. There, a Yakima orchard contracted with Central Washington Refrigeration to install a set of refrigerated rooms for apple storage. Central in turn contracted with an engineering company to specially manufacture coils for the refrigeration units. When the cold rooms failed, the orchard sued Central, and Central filed a third-party indemnification claim against the engineering company, alleging the coils were defective. The court held that a UCC contract for the sale of goods can support an indemnity claim. The parties in Barbee were in direct privity, and the court thus did not address whether direct privity is required. Barbee offers no illumination of the issue here.
Urban Development next argues that vertical privity is sufficient, relying upon Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Construction.[17] Urban Development is correct that vertical privity may be sufficient to support implied warranty liability under certain circumstances, but those circumstances are not present here. For vertical privity to be sufficient to create an implied warranty, the claimant must essentially occupy the position of an intended third party beneficiary.[18] In Touchet Valley, the Supreme Court applied the "sum of the *118 interactions" test set forth in Kadiak Fisheries Co. v. Murphy Diesel Co.,[19] and held that Touchet Valley was the intended beneficiary of Truss-T's warranties to Opp & Seibold:
Applying the Kadiak analysis to the facts before us, we note that Truss-T knew Touchet Valley's identity, its purpose, and its requirements for the grain storage building. Truss-T designed the building knowing the specifications were the purchaser's. As was its business practice, Truss-T delivered the components to Touchet Valley's construction site. And, when the first beams buckled in March 1985, Truss-T joined [the retailers] Opp & Seibold to attempt repairs.
We find the sum of this interaction indistinguishable from Kadiak. We reverse the trial court and hold that Touchet Valley Grain Owners was the intended beneficiary of Truss-T's implied warranties to Opp & Seibold.[20]
By contrast, Urban Development had no interactions with either Evergreen or Dryvit, and Dryvit did not design the siding system specifically for Urban Development's requirements. There is thus nothing to suggest Urban Development was an intended beneficiary of implied warranties made by Dryvit or Evergreen to Wall Finishes.
Urban Development also relies on Tex Enterprises, Inc. v. Brockway Standard, Inc.[21]Tex did not involve a third party beneficiary analysis. Rather, the court held "a manufacturer's representations and conduct can create express and implied warranties which run directly to the purchaser independent of any contract between the manufacturer and intermediary."[22] There, Brockway's representative convinced the president of Tex Enterprises to purchase Brockway containers for its deck coating, stating that they were "just as good" as those Tex had purchased in the past.[23] Tex bought the containers from a distributor. When the containers malfunctioned, Tex brought breach of warranty claims against Brockway. We held that "the direct contact and representations between Brockway and Tex created express and implied warranties independent of [the distributor's] contract with Brockway."[24] Again, however, Urban Development had no direct interactions with either Evergreen or Dryvit, and cannot acquire warranties based upon their conduct.
Dryvit's advertising brochures are another matter. Urban Development argues it was an intended beneficiary of express warranties in Dryvit's advertising brochures, which, according to Urban Development, show that Dryvit manufactured the siding knowing it would be purchased by general contractors and used for residential siding.
Privity requirements are relaxed when a manufacturer makes express representations in advertising.[25] The plaintiff "must be a party whom the defendant could expect to act upon the representation and must rely on it."[26] Dryvit's brochures clearly asserted that the siding product was durable and resistant to water penetration, and the very nature of its product leads to the conclusion that general contractors are parties Dryvit could expect to act on its representations. In addition, Urban Development's president declared that he relied on Dryvit's advertising when purchasing the siding. Genuine issues of material fact therefore remain as to the express warranty claim against Dryvit, and the trial court erred in dismissing it. Because a relationship involving express warranties provides a sufficient basis for an implied indemnity claim, the trial *119 court also erred in dismissing the indemnity claim against Dryvit.
In sum, the trial court properly dismissed the indemnification claims against R & E, Cox, SDS, EDCA, and Evergreen. Questions of fact remain, however, as to whether Urban Development relied on representations and warranties in Dryvit's advertising brochures, and the trial court erred by dismissing the warranty and indemnification claims against Dryvit.

Breach of Contract
The trial court dismissed Urban Development's breach of contract claims against R & E, Cox, EDCA, and SDS, on the ground that all four claims were barred by the three-year statute of limitation for actions based on oral contracts. Urban Development concedes its contracts with EDCA and Cox were oral contracts, but contends the trial court erred by concluding its contracts with R & E and SDS were oral.
RCW 4.16.040(1) establishes a six-year limitation period for an "action upon a contract in writing, or liability express or implied arising out of a written agreement." A written agreement for purposes of this limitation period must contain all the essential elements of the contract, which include the subject matter, parties, terms and conditions, and price or consideration.[27] The question as to R & E and SDS is thus whether a writing existed that contained the essential elements of a contract.
R & E. R & E submitted a written proposal after work had began. The proposal identifies the subject matter of the contract, the parties, the terms and conditions, and the price. Urban Development argues the proposal contains all essential elements of a contract. R & E contends that because Urban Development did not sign it, the essential element of acceptance is missing. But the inquiry here is not whether Urban Development accepted R & E's offer; it is undisputed that it did, and that a contract was formed. The proper inquiry is whether the writing contains the essential elements for purposes of the six-year statute of limitation.
We conclude it does. Signatures of both parties are not essential elements: "`Ex parte writings are sufficient to bring a contract within the 6-year statute of limitations if the writing contains all of the elements of a contract.'"[28] The proposal is thus not rendered insufficient simply because Urban Development did not sign it. Nor is it insufficient because it was tendered after work under the contract had already started; a memorandum that memorializes an oral agreement between the parties satisfies the writing requirement.[29] The contract between R & E and Urban Development was therefore a written contract governed by the six-year statute of limitation, and the trial court erred by granting summary judgment to R & E on grounds its contract was oral.
SDS. The record contains no writing memorializing an agreement between SDS and Urban Development. Urban Development argues that such a writing existed and was lost, based upon the testimony of SDS president Steve Stone. We need not resolve this question, however, because there is no evidence in the record that SDS breached its contract.
The sole argument Urban Development advanced in opposition to SDS' motion for summary judgment was that SDS improperly installed the condominium windows, causing them to sag and leak.[30] The only *120 evidence in the record on this subject is the testimony of Keith Soltner and Barbara Williams, both architects hired by Urban Development. Soltner opined that the windows were sagging, but that the sagging was probably attributable to the manufacturer. Williams did not notice any sagging; she testified only that "if the sagging [observed by Soltner] had occurred without distressing the cladding or window frame joints, it is likely that the windows were not plumb when installed" and that in such a case, "the window installer would be responsible for this condition."[31] Even viewed in a light most favorable to Urban Development, this testimony is speculation and does not raise questions of fact regarding SDS' breach of contract. The trial court properly granted summary judgment to SDS.
Cox and EDCA. The trial court dismissed Urban Development's breach of contract claims against Cox and EDCA because they were filed on October 3, 2000, more than three years after completion of construction on November 22, 1996. Urban Development concedes these contracts were oral and subject to a three year statute of limitation.[32] Urban Development argues, however, that the trial court erred by concluding the statute of limitation began to run at completion of construction, rather than when the damage was discovered. In Architechtonics Const. Mgmt. Inc. v. Khorram,[33] we held that the discovery rule applies in contract cases.
Under the discovery rule, the statute begins to run when a party knows or, in the exercise of due diligence, should know of a breach.[34] Because the parties below did not have the benefit of our decision in Khorram, no record has been developed, and we therefore remand for a determination of when Urban Development knew or should have known of any breach by Cox or EDCA.

CONCLUSION
We affirm dismissal of the indemnification claims against Evergreen Building Products, R & E Enterprises, SDS, Cox Wrought Iron, and EDCA Roofing, as well as the breach of contract claim against SDS, Inc. We reverse the dismissal of the warranty and indemnification claims against Dryvit, and the breach of contract claims against R & E Enterprises, Cox Wrought Iron, and EDCA Roofing, and remand for proceedings consistent with this opinion.
Affirmed in part, reversed in part, remanded.
WE CONCUR: AGID and KENNEDY, JJ.
NOTES
[1] Urban Development has voluntarily abandoned its negligent construction claims.
[2] Urban Development settled its claims against the plastering subcontractor, Wall Finishes, Inc.
[3] Urban Development refers to these as claims for "equitable indemnification" claims. Both at trial and on appeal, the parties have treated these as claims for implied contractual indemnification.
[4] Central Washington Refrigeration, Inc. v. Barbee, 133 Wash.2d 509, 513, 946 P.2d 760 (1997).
[5] Barbee, 133 Wash.2d at 514 n. 4, 946 P.2d 760.
[6] Barbee, 133 Wash.2d at 516-17, 946 P.2d 760.
[7] See Barbee, 133 Wash.2d at 514 n. 4, 946 P.2d 760 (quoting 42 C.J.S. INDEMNITY § 31, at 121 (1991)) ("A right to indemnity, while not implied in every contract or contractual relationship, may be claimed on the basis of an implied contract, which can arise either from the conduct of the parties or be implied from the nature of their relationship, whether it be a contractual or other legal relationship, and from given warranties and covenants, or be otherwise implied from unique special factors indicating the parties' intent that the party from whom indemnity is sought should be ultimately liable").
[8] Arango Constr. Co. v. Success Roofing, Inc., 46 Wash.App. 314, 317-20, 730 P.2d 720 (1986) (citing Christiansen Bros., Inc. v. State, 90 Wash.2d 872, 877, 586 P.2d 840 (1978)).
[9] Clerk's Papers at 331, 337 (No. 49355-8-I).
[10] Opening Brief at 42 (No. 49355-8-I).
[11] 102 Wash.2d 30, 51, 686 P.2d 465 (1984).
[12] Eastlake Constr., 102 Wash.2d at 49-50, 686 P.2d 465.
[13] Eastlake Constr., 102 Wash.2d at 51, 686 P.2d 465.
[14] See Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash.2d 406, 417, 745 P.2d 1284 (1987).
[15] For the same reasons, such a warranty cannot form the basis for Urban Development's indemnification claims against the other respondents.
[16] Opening Brief at 27-28 (No. 49355-8-I).
[17] 119 Wash.2d 334, 831 P.2d 724 (1992).
[18] See Kadiak Fisheries Co. v. Murphy Diesel Co., 70 Wash.2d 153, 164, 422 P.2d 496 (1967).
[19] See Kadiak, 70 Wash.2d at 164-65, 422 P.2d 496.
[20] Touchet Valley, 119 Wash.2d at 346-47, 831 P.2d 724.
[21] 110 Wash.App. 197, 39 P.3d 362, review granted, 147 Wash.2d 1014, 56 P.3d 991 (2002).
[22] Tex, 110 Wash.App. at 202, 39 P.3d 362.
[23] Tex, 110 Wash.App. at 199, 39 P.3d 362.
[24] Tex, 110 Wash.App. at 203, 39 P.3d 362.
[25] Baughn v. Honda Motor Co., 107 Wash.2d 127, 151-52, 727 P.2d 655 (1986) (citing J. White & R. Summer, UNIFORM COMMERCIAL CODE § 11-7, at 410 (2d ed. 1980)).
[26] J. White & R. Summer, UNIFORM COMMERCIAL CODE § 11-7, at 598-98 (4th ed.1995); see also, Reece v. Good Samaritan Hospital, 90 Wash.App. 574, 585, 953 P.2d 117 (1998).
[27] Bogle & Gates, P.L.L.C. v. Holly Mountain Resources, 108 Wash.App. 557, 560-61, 32 P.3d 1002 (2001).
[28] Holly Mountain, 108 Wash.App. at 561, 32 P.3d 1002 (quoting Kloss v. Honeywell, Inc., 77 Wash.App. 294, 890 P.2d 480 (1995)).
[29] Holly Mountain, 108 Wash.App. at 561-62, 32 P.3d 1002.
[30] On appeal, Urban Development argues that SDS also damaged the condominiums when it improperly: (1) installed sealant tape around the windows; (2) framed and sloped the decks; and (3) installed parapet wall siding. These arguments were not raised below, and we do not consider them. See RAP 2.5(a).
[31] Clerk's Papers at 545 (No. 49355-8-I).
[32] RCW 4.16.080(3).
[33] 111 Wash.App. 725, 737, 45 P.3d 1142 (2002).
[34] Khorram, 111 Wash.App. at 737, 45 P.3d 1142.