[No. 73543-3.    En Banc.]
Argued November 18, 2003.    Decided May 27, 2004.

FORTUNE VIEW CONDOMINIUM ASSOCIATION, *Plaintiff*, v. FORTUNE STAR DEVELOPMENT COMPANY, ET AL., *Defendants*, URBAN DEVELOPMENT, INC., *Respondent*, DRYVIT SYSTEMS, INC., *Petitioner*.

*Bradley L. Fisher* (of *Davis Wright Tremaine*), for petitioner.

*David S. Cottnair* and *Joanne T. Blackburn* (of *Garvey Schubert Barer*); *Dirk J. Muse* (of *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.*); *John P. Hayes* and *Devon P. Groves* (of *Forsberg & Umlauf, P.S.*); *William A. Linton* (of *Linville Linton, P.L.L.C.*); and *Sherman L. Knight* (of *Law Offices of Sherman Knight*), for respondent.

FAIRHURST, J. — A general contractor brought breach of warranty (express and implied) and implied indemnity

claims against the manufacturer of an allegedly defective siding system used in the construction of a condominium project. The Court of Appeals held that express warranties made through advertising can form the basis of an implied indemnity claim. We affirm.

## I. STATEMENT OF THE CASE

Urban Development, Inc., a general contractor, was hired by Fortune Star Development Company to construct the Fortune View Condominiums. Soon after the condominiums were completed, they began to crack and leak, resulting in serious water damage. The condominium homeowners association sued Fortune Star, and Fortune Star sued Urban Development. Urban Development counterclaimed and brought fourth-party claims, including breach of warranty and implied indemnity, against several subcontractors. Many of Urban Development's claims against the subcontractors were denied by the trial court, and some were reinstated by the Court of Appeals. Although Urban Development cross-petitioned for review of certain claims against the subcontractors, we denied Urban Development's cross-petition for review.

In addition to the subcontractor claims, Urban Development filed claims against Dryvit Systems, Inc., the manufacturer of an allegedly defective siding system used in the condominium project, and Evergreen Building Products, L.L.C.,[1] the distributor that sold the Dryvit siding system to the siding subcontractor.[2] The Dryvit siding system is sold through exclusive Dryvit distributors and installed by subcontractors trained or approved by Dryvit. Evergreen was the exclusive distributor for Dryvit materials in Washington, Northern Idaho and Alaska, and sold the Dryvit siding system to the siding subcontractor hired by Urban Development.

---

[1] Evergreen is the successor-in-interest to a company called Seattle Wall Systems, Inc.

[2] The siding subcontractor and Urban Development settled out of court.

Dryvit provided Evergreen with sales brochures that were used to convince Urban Development to incorporate the Dryvit siding system into the Fortune View condominium project. The Dryvit sales brochure contained a section specifying the physical properties of the system, including water penetration and water resistance test results. This section of the brochure also specified that the Dryvit materials come with a five-year limited warranty. Clerk's Papers at 713 ("WARRANTY Dryvit offers a five-year limited warranty on Dryvit materials. Contact Dryvit Systems, Inc. for further details"). The brochure also represented that the Dryvit siding system was "designed and engineered specifically for the residential and light commercial market," and listed the use of "warranted materials" as an advantage for builders. *Id.* at 711. In an affidavit, Urban Development's president asserted that the company relied on the warranties in the brochure when submitting its bid for the Fortune View condominium project and understood that the Dryvit materials were supposed to be good for at least five years.

Urban Development obtained the Dryvit siding system for use in the Fortune View condominium project through Dryvit's normal distribution chain. Thus, while Urban Development entered into a contract with the Dryvit-approved installer (the siding subcontractor), it did not have contracts with Evergreen or Dryvit. Nevertheless, Urban Development claimed it was entitled to both implied and express warranties and implied indemnity from Evergreen and Dryvit. The trial court granted summary judgment against Urban Development and in favor of Evergreen and Dryvit.

The Court of Appeals agreed that Urban Development was not entitled to the benefits of implied warranties for the sale of goods found in the Uniform Commercial Code (UCC) because there was no privity of contract between Urban Development and Evergreen or Dryvit. *Urban Dev., Inc. v. Evergreen Bldg. Prods., L.L.C.*, 114 Wn. App. 639, 647, 59 P.3d 112 (2002). The Court of Appeals also agreed that

vertical privity was not sufficient to provide Urban Development the benefit of any warranties made by Evergreen or Dryvit to the siding subcontractor because Urban Development was not an intended third-party beneficiary of those warranties. *Id.* at 649. Urban Development cross-petitioned for review of these implied warranty claims against Evergreen and Dryvit, but we did not accept review.

Although the Court of Appeals agreed that Urban Development did not benefit from *implied* warranties under the UCC and was not a third-party beneficiary of any warranties made to the siding subcontractor, the Court of Appeals determined that factual issues remain regarding whether Urban Development is entitled to the benefit of *express* warranties made in Dryvit's advertising. *Id.* Accordingly, the Court of Appeals reversed the entry of summary judgment in favor of Dryvit and reinstated Urban Development's claims for breach of express warranties and implied indemnity (based on breach of express warranties). *Id.* at 649-50. The Court of Appeals affirmed the dismissal of claims against Evergreen. *Id.* at 650.

Dryvit did not petition for review of the Court of Appeals decision to reinstate Urban Development's express warranty claim but did seek review of the court's holding that the express warranties in advertising can support an implied indemnity claim. We granted Dryvit's petition for review. *Urban Dev., Inc. v. Evergreen Bldg. Prods., LLC*, 149 Wn.2d 1027, 78 P.3d 657 (2003).

## II. ISSUE

Can express warranties made in advertising support an implied indemnity claim?

## III. ANALYSIS

### A. *Express Warranties in Advertising*

As noted above, the issue of whether Dryvit's advertising creates express warranties is not before us because Dryvit

has petitioned for review of only the Court of Appeals' decision to revive Urban Development's claim for implied indemnity.[3] Accordingly, for purposes of reviewing the summary judgment order dismissing Urban Development's implied indemnity claim, we assume that Urban Development benefits from express warranties in Dryvit's advertising. *Tex Enters., Inc. v. Brockway Standard, Inc.*, 149 Wn.2d 204, 208, 66 P.3d 625 (2003) ("The facts and reasonable inferences from the facts must be considered in the light most favorable to . . . the nonmoving party.").

## B. Implied Indemnity Claims

We established the availability of implied indemnity claims in *Central Washington Refrigeration, Inc. v. Barbee*, 133 Wn.2d 509, 946 P.2d 760 (1997). As *Barbee* explains, "[w]hile indemnity sounds in contract and tort it is a separate equitable cause of action." 133 Wn.2d at 513 (footnote omitted). A cause of action for implied indemnity "arises when one party incurs a liability the other party should discharge by virtue of the nature of the relationship between the two parties." *Id.* The implied indemnity action in *Barbee* was based on the existence of *implied* warranties. *Id.* at 516 ("a contractual relationship under the U.C.C., with its implied warranties, provides sufficient basis for an implied indemnity claim").

While the implied indemnity claim in *Barbee* was supported by implied warranties, the issue in this case is whether an implied indemnity claim can go forward on the basis of express warranties. The Court of Appeals held that an implied indemnity claim can be supported by an express

---

[3] Dryvit concedes in its petition for review that strict privity is not required for advertising to give rise to *express* warranties. In *Baughn v. Honda Motor Co.*, we held that while contractual privity is required for *implied* warranty claims, contractual privity is not required for a plaintiff to benefit from *express* warranties in advertising. *See Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 151-52, 727 P.2d 655 (1986); *see also Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 347, 831 P.2d 724 (1992) ("[W]e believe *Baughn* expands privity to include the express representations at issue here."); *Tex Enters., Inc. v. Brockway Standard, Inc.*, 149 Wn.2d 204, 213, 66 P.3d 625 (2003) (explaining that express warranties are not as closely guarded as implied warranties because their adoption requires some voluntary action).

warranty. *Urban Dev.*, 114 Wn. App. at 649-50 ("Because a relationship involving express warranties provides a sufficient basis for an implied indemnity claim, the trial court also erred in dismissing the indemnity claim against Dryvit."). We agree.

Dryvit argues that the Court of Appeals holding conflicts with our decision in *Barbee* because the express warranty in this case arose through representations made in advertising and did not involve a contractual relationship. As noted above, *Barbee* states that "a contractual relationship under the U.C.C., with its implied warranties, provides sufficient basis for an implied indemnity claim . . . ." *Barbee*, 133 Wn.2d at 516. From this statement, Dryvit concludes implied indemnity claims must be based on an underlying contract. According to Dryvit, *Barbee* creates a distinction between express warranties that arise through contract and express warranties that arise through direct representations in advertising.

Dryvit's position that an implied indemnity may be supported only by an express warranty contained in a contract is a misreading of *Barbee*. *Barbee* specifically identifies implied indemnity as a separate *equitable* remedy, not an implied contractual remedy. *Barbee*, 133 Wn.2d at 517 n.12 ("indemnity is an equitable action and 'is not based on contract or tort, although either may secondarily be involved, but on one party paying more than its fair share' " (quoting *City of Willmar v. Short-Elliott-Hendrickson, Inc.*, 512 N.W.2d 872, 874 (Minn. 1994))). A contract was not required in *Barbee* to support the implied indemnity claim. Instead, a contract was required to support the implied warranties upon which the implied indemnity claim rested because implied warranties are not permitted in the absence of a contract. *See Tex Enters.*, 149 Wn.2d at 211 ("the plain language of both RCW 62A.2-314 and -315 [UCC] requires that implied warranties arise only out of contractual relationships. . . . This language can be contrasted with RCW 62A.2-313 (express warranties), the language of which does not refer to an underlying 'contract' "). A

contract was necessary in *Barbee*, therefore, to support the warranty basis for the implied indemnity claim.

*Barbee* does not support Dryvit's position that there must always be a contractual privity for an implied indemnity claim to arise. As discussed above, contractual privity is not required to create *express* warranties. Dryvit offers no reason why *Barbee* should be read to permit implied indemnity on the basis of an implied warranty but forbid implied indemnity on the basis of an express warranty.[4] Moreover, the language of *Barbee* does not contain such a distinction. 133 Wn.2d at 517 (implied indemnity claim permitted "when the buyer incurs liability to a third party as a result of a defect in the goods which would constitute a breach of the seller's *implied or express* warranties" (emphasis added)).

Instead, Dryvit argues that permitting implied indemnity in this case will expose it to claims from anyone who comes into contact with a Dryvit brochure. The extent of Dryvit's exposure, however, is tied to the extent of any express warranties it chose to make in its advertising. Dryvit may limit its exposure to express warranties by not making them. If, however, Dryvit finds express warranties to be a useful tool to induce builders to use its products and wishes to continue to make such representations regarding the quality and durability of its products, it cannot hide behind the doctrine of privity when its product fails to perform as represented.

## IV. CONCLUSION

Express warranties, including those made through advertising, provide a sufficient basis for an implied indem-

---

[4] Dryvit does argue that *Touchet Valley, Tex Enterprises*, and *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 70 Wn.2d 153, 422 P.2d 496 (1967), require a contractual basis for implied indemnity claims. However, the portions of these cases cited by Dryvit pertain only to the need for a contractual basis for establishing implied *warranties*, and fail to address the reasoning of these three cases in the context of express warranties. As noted above, "[implied] warranties must be more closely guarded than express warranties, whose adoption requires some voluntary action." *Tex Enters.*, 149 Wn.2d at 212. Dryvit's argument conflates the meaning of implied warranty with implied indemnity and does not address whether express warranties may support a claim of implied indemnity.

nity claim. Accordingly, we affirm the Court of Appeals' decision reinstating Urban Development's claim for implied indemnity based on breach of express warranties.

ALEXANDER, C.J., and IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

MADSEN, J. (dissenting) — The majority opinion is troubling for several reasons. First and most significantly, the majority opinion is based on a misunderstanding of indemnity law. As a result, the majority finds a cause of action for indemnity under *Central Washington Refrigeration, Inc. v. Barbee*, 133 Wn.2d 509, 946 P.2d 760 (1997) that is not justified by that decision nor by respondent Urban Development, Inc.'s arguments. The type of implied indemnity claim recognized in *Barbee* expressly requires a contractual relationship between the parties. The contractual requirement discussed in *Barbee* is in accordance with the analysis of numerous courts from other jurisdictions.

Also troubling is the fact that the majority's erroneous application of *Barbee* in the absence of any contractual relationship is based on the existence of an express warranty. The trial court dismissed Urban Development's warranty claims, but the Court of Appeals reinstated an express warranty claim *in the absence of any appeal on this issue* by Urban Development.

Finally, there are significant questions about whether express warranty should form the basis for an implied indemnity claim in this case, and in resting its claim on *Barbee*, Urban Development does not present the court with sufficient argument or authority to answer those questions.

I would hold that Urban Development is not entitled to indemnity under *Barbee*. Because the majority holds to the contrary, I respectfully dissent.

### Discussion

The central flaw in the majority opinion is its misstatement of the indemnity claim recognized in *Barbee*. The majority reads *Barbee* as recognizing an equitable remedy based on implied warranty. The majority asserts the indemnity claim does not depend on existence of a contract. Instead, the majority believes the contract was required in *Barbee* only because implied warranties are not permitted in the absence of a contract. Majority at 540-41. Thus, the majority concludes, the presence of a contractual relationship is not a requirement for a *Barbee* implied indemnity claim.

This reasoning reflects a fundamental misunderstanding of basic principles of indemnity law and *Barbee* itself. A number of courts have identified three general types of indemnity. The first is contractual indemnity, which is of no significance in this case.[5] The other two are theories of implied indemnity and are premised on quite different bases. The first is implied contractual indemnity, also called implied-in-fact indemnity. This type is "based on the special nature of a contractual relationship between parties." *People's Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir. 1986) (citing *Ryan Stevedoring Co. v. Pan-Atl. S.S. Corp.*, 350 U.S. 124, 133-34, 76 S. Ct. 232, 100 L. Ed. 133 (1956)); *see also, e.g., Int'l Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.*, 838 F.2d 124, 127 (4th Cir. 1988); *Quadrangle Dev. Corp. v. Otis Elevator Co.*, 748 A.2d 432, 435 (D.C. Cir. 2000); *Hanscome v. Perry*, 75 Md. App. 605, 615, 542 A.2d 421 (1988); *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 587 S.E.2d 470, 475 (2003); *Mann v. Zabolotny*, 2000 ND 160, 615 N.W.2d 526, 528-29; *Schneider Nat'l, Inc. v. Holland Hitch Co.*, 843 P.2d 561, 573 (Wyo. 1992). However, not every contract or contractual relationship creates a right to implied indemnity. *Hanscome*, 75 Md. App. at 615. There must be " 'unique special factors demonstrating that the parties *intended* that

---

[5] This type of indemnity is expressly provided for between contracting parties.

the would-be indemnitor bear the ultimate responsibility . . . or when there is a generally recognized special relationship between the parties.' " *Id.* (emphasis added) (quoting *Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth.*, 693 F.2d 1, 2-3 (1st Cir. 1982)). Thus, there must be a "contract between two parties that *necessarily implies the right.*" *Kaleel Builders*, 587 S.E.2d at 474 (emphasis added). The implication of the right to indemnity may arise from "the relationship between the parties, circumstances of the parties' conduct, and that the creation of the indemnitor/indemnitee relationship *is derivative of the contracting parties' intended agreement.*" *Id.* (emphasis added); *see* 3 PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., CONSTRUCTION LAW § 10:110 *Implied Contractual Indemnity: Contrasted with Equitable Indemnity* (2003) (implied-in-fact indemnity always depends upon the parties' intentions; contractual relationship must exist for implied contractual indemnity to arise).

The second general type of implied indemnity is equitable indemnity (or "common law" indemnity), also called implied-in-law indemnity. This type of indemnity is tort-based and is "created by a relationship implied in law between the person seeking indemnity and the person from whom indemnity is sought for a negligent or tortious act." *Schneider Nat'l*, 843 P.2d at 573; *see Goodpasture*, 782 F.2d at 351; *Int'l Surplus Lines*, 838 F.2d at 126-27; *Quadrangle Dev.*, 748 A.2d at 435; *Hanscome*, 75 Md. App. at 615, 617-18; *Kaleel Builders*, 587 S.E.2d at 474-75; *Mann*, 615 N.W.2d at 528-29. Implied-in-law indemnity is traditionally found where there is a great disparity in the fault of two tortfeasors, and one paid for a loss that was primarily the responsibility of the other. *Goodpasture*, 782 F.2d at 351. The tort-based type of indemnity has also been described as follows: " 'A person who, *without personal fault*, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.' " *Hanscome*, 75 Md. App. at 617 (quoting RESTATE-

MENT OF RESTITUTION § 96). Courts liberally view "without personal fault" to mean that indemnity will not be denied where there is some culpability, instead the cost of negligence will be allocated to the joint tortfeasor primarily responsible. *Goodpasture*, 782 F.2d at 351; *Hanscome*, 75 Md. App. at 617. Thus, implied-in-law indemnity traditionally has been " 'based on variations in the relative degrees of fault of joint tortfeasors . . . not *in pari delicto.*' " *Quadrangle Dev.*, 748 A.2d at 435 (quoting *E. Penn Mfg. Co. v. Pineda*, 578 A.2d 1113, 1127 n.20 (D.C. 1990)). Some courts have recognized the right to implied-in-law indemnity only where there is an independent duty: " 'In order to establish the right to this particular type of implied indemnity, the obligation must arise out of a specific duty of defined nature—separate from the injury to the [plaintiff]—owed to the third party . . . . ,' and there must also be a special legal relationship between the tortfeasors." *Quadrangle Dev.*, 748 A.2d at 435 (quoting *Myco, Inc. v. Super Concrete Co.*, 565 A.2d 293, 299 (D.C. 1989)). Another principle frequently stated by some courts is that "indemnity implied-in-law arises from an underlying tort, where a passive tort-feasor pays the judgment owed by an active tort-feasor to the injured third party." *Kaleel Builders*, 587 S.E.2d at 474. This formulation appears in a number of Washington cases predating the tort reform act of 1981. *See, e.g., Rufener v. Scott*, 46 Wn.2d 240, 280 P.2d 253 (1955).

Not surprisingly, with the advent of statutes recognizing rights to contribution and statutes requiring apportionment of fault among tortfeasors, the availability of implied-in-law indemnity has changed. *See* RCW 4.22.040; *Barbee*, 133 Wn.2d at 514 n.3; *see generally* 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE §§ 12.61, 12.70 (2d ed. 2000).

Implied-in-law indemnity does not appear to be implicated in this case. First, under Washington law product liability claims based on breach of express or implied warranties are either tort actions under the products liabil-

ity act (PLA), chapter 7.72 RCW, or contract actions under Article 2 of the Uniform Commercial Code (UCC), Title 62A RCW. *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 343, 831 P.2d 724 (1992). Urban Development conceded in response to Dryvit's motion for summary judgment that the economic loss rule applies in this case. Under this rule, codified under the 1981 tort reform act at RCW 7.72.010(6) (and see RCW 7.72.030), a cause of action for product-related harms does not exist under the PLA for direct and consequential economic loss. *Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 856-60, 774 P.2d 1199, 779 P.2d 697 (1989); *see, e.g., Hofstee v. Dow*, 109 Wn. App. 537, 36 P.3d 1073 (2001); *Staton Hills Winery Co. v. Collons*, 96 Wn. App. 590, 980 P.2d 784 (1999). As the court explained in *Graybar*, the PLA's economic loss exclusion operates to "restrict product liability plaintiffs to contract remedies for economic loss." *Graybar*, 112 Wn.2d at 857. Any claim based upon breach of warranty (express or implied) resulting solely in economic loss, as Urban Development concedes is the case here, does not fall within the PLA, and thus is not a tort claim. Therefore, because Dryvit's purported responsibility for indemnity does not appear to be tort-based, a tort-based equitable indemnity (common law indemnity) claim, i.e., implied-in-law indemnity claim, does not appear appropriate here. *See, e.g., Fieldstone Co. v. Briggs Plumbing Prods., Inc.*, 54 Cal. App. 4th 357, 62 Cal. Rptr. 2d 701 (1997) (equitable indemnity not available; no joint tort liability because loss was economic loss; economic loss generally not recoverable under a negligence theory except under narrow exception not applicable in case).[6]

Second, Urban Development does not base its claim for indemnity on a tort theory. Instead, Urban Development maintains that it is entitled to indemnity based upon warranties under the UCC running from Dryvit to Urban

---

[6] It is important to bear in mind that states' laws vary on questions such as whether, when, and under what theory economic loss may be recovered, as well as how state tort or contract law or principles of equity may affect an implied indemnity claim.

Development. As to implied warranties, as the Court of Appeals correctly held, Urban Development was not in privity with Dryvit and thus cannot maintain an implied warranty claim and cannot base an implied indemnity claim on implied warranty. This court did not grant review of this issue. In its supplemental brief to this court, Urban Development expands its argument urging that it is entitled to indemnity on the basis of express warranty under the UCC; specifically, Urban Development argues that it is entitled to indemnity under *Barbee*'s holding that "a contractual relationship under the U.C.C., with its implied warranties, provides sufficient basis for an implied indemnity claim when the buyer incurs liability to a third party as a result of a defect in the goods which would constitute a breach of the seller's implied or express warranties." *Barbee*, 133 Wn.2d at 516-17.[7]

However, *Barbee* does not control this case. The court in *Barbee* expressly stated that "[t]he variety of indemnity relevant to this case is *implied contractual indemnity*, also referenced to as *'implied in fact' indemnity*." *Barbee*, 133 Wn.2d 509 at 513 (emphasis added). The court said that "[t]he question here is whether the *contractual relationship* between buyer and seller under the U.C.C. is sufficient to give rise to an implied right of indemnity when a defect in the good causes damage to a third party user and such defect constitutes breach of seller's warranties." *Barbee*, 133 Wn.2d at 514 (emphasis added). The court also referred to a "majority of courts . . . which have ruled the *contractual relationship between buyer and seller* under the U.C.C.

[7] Urban Development maintains that there was a "middleman distributor" in *Barbee* between the buyer, Central Washington Refrigeration, Inc. (the party incurring liability and seeking indemnification) and McCormack Engineering, the manufacturer. Suppl. Br. of Resp't at 12 n.2. Urban Development asserts the same situation exists here. This court's opinion in *Barbee* makes no reference to a middleman. The Court of Appeals opinion in the case, to which Urban Development refers, does not identify a middleman in the sense of an entity in the chain of distribution. Instead, the opinion refers to a person "who handled sales of McCormack equipment." *Cent. Wash. Refrigeration, Inc. v. Barbee*, 81 Wn. App. 212, 215, 913 P.2d 836 (1996), *rev'd*, 133 Wn.2d 509, 946 P.2d 760 (1997). Both the Court of Appeals and this court clearly referred to a contract directly between Central Washington Refrigeration and McCormack. *Barbee*, 81 Wn. App. at 217-18; *Barbee*, 133 Wn.2d at 511.

is a sufficient relationship to give rise to an implied right of indemnity." *Barbee*, 133 Wn.2d at 515-16 (emphasis added). Thus, the court was clearly in accord with other courts that distinguish between implied contractual indemnity (implied-in-fact indemnity) and equitable or common law indemnity (implied-in-law indemnity) and hold that implied contractual indemnity requires a contractual relationship between the parties. Moreover, and also in accord with widely accepted principles explained above, there must be something about the contract or the contractual relationship from which the implication may be made that the parties intended a right of indemnification. In *Barbee*, the court drew that implication from the UCC implied warranties.

The court's reference in *Barbee* to indemnity based upon express warranties cannot be read independently of the requirement of a contractual relationship. The court expressly stated, as quoted above, that "*a contractual relationship* under the U.C.C. . . . provides sufficient basis for an implied indemnity claim when the buyer incurs liability . . . [resulting from] a breach of the seller's . . . express warranties." *Barbee*, 133 Wn.2d at 516-17 (emphasis added). Here, however, as the majority acknowledges, Urban Development "did not have contracts with Evergreen or Dryvit." Majority at 537. Moreover, Urban Development's claim that it was a third party beneficiary of a Dryvit contract, Supplemental Brief of Respondent at 14, must fail because that same argument was rejected by the Court of Appeals when it ruled that Urban Development is not entitled to maintain a claim for implied warranty (or for implied warranty based upon implied indemnity). *Urban Dev., Inc. v. Evergreen Bldg. Prods., L.L.C.*, 114 Wn. App. 639, 647-48, 59 P.3d 112 (2002), *review granted*, 149 Wn.2d 1027 (2003). That ruling is not before this court. There is simply no contractual relationship between Urban Development and Dryvit. Thus, the critical prerequisite to implied contractual indemnity is lacking in this case, and *Barbee* does not apply.

The question then becomes whether, in the absence of a contractual relationship, Urban Development has an implied right of indemnity based upon any express warranty under the UCC. The majority does not address this question, the real issue in this case. As indicated, Urban Development premises its claim to a right of implied indemnity on *Barbee*. Suppl. Br. of Resp't at 5-6, 18. In contending that *Barbee* does not require a contractual relationship, Urban Development also relies on Washington cases recognizing causes of action for breach of express warranties under a relaxed standard of privity as supporting its claim for indemnity. The first thing to be said about these cases is that none of them involves a right to implied indemnity. The second thing to note is that in each case the party asserting the claim was a remote purchaser of the product or good covered by the express warranty asserted. *Tex Enters., Inc. v. Brockway Standard, Inc.*, 149 Wn.2d 204, 66 P.3d 625 (2003) (buyer of steel containers brought breach of implied warranty claims; court held that implied warranties under the UCC do not arise out of express representations to a remote commercial purchaser absent privity or reliance on an underlying contract; also recognizing that a relaxed privity standard applies where express warranties are made to a downstream purchaser); *Touchet Valley*, 119 Wn.2d at 347-50 (remote purchaser was a third party beneficiary of express warranty through advertising); *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 727 P.2d 655 (1986) (noting relaxed standard of privity applies where express warranty under the UCC is made to a purchaser, but found no express warranty was made; case involved personal injury to child of consumer-purchaser). Here, Urban Development was not a purchaser of the allegedly defective siding system, and it fails to sufficiently explain why this should make no difference.

Moreover, as noted, Urban Development has conceded that the losses involved here are economic losses. Leading commentators note that the UCC does not address the question whether in warranty actions "a non-privity *buyer*

may recover for direct economic loss." 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 11-5, at 592 (4th ed. 1995) (emphasis added). The authors note that many courts have held that recovery may be allowed where the "remote *seller* has breached an *express* warranty." *Id.* at 593 (first emphasis added) (and also noting that a growing number of courts allow such recovery in the absence of reliance). The authors also note that a minority of courts permit warranty recovery for direct economic loss in the case of nonprivity "ordinary *consumers*." *Id.* at 594. Urban Development does not address the question whether, in light of the fact that it is not a buyer, it would be entitled to a breach of express warranty claim in the absence of privity where the losses sustained are economic losses. Since its implied indemnity claim rests upon an alleged breach of express warranty, this is also a significant question. And I do not believe it is sufficient for this court to say that Dryvit did not seek review of the reinstatement of Urban Development's express warranty claim. First, Urban Development did not raise that issue on appeal. Second, the parties' arguments on implied indemnity are inextricably tied to the express warranty claim. *See, e.g.*, Pet. for Review at 9-12. I also note that while the majority declines to address the availability of the express warranty claim because Dryvit did not seek review of the issue, it evidently is not troubled by the fact that the Court of Appeals reinstated the claim even though Urban Development itself did not seek review of the trial court's dismissal of the same claim.

Finally, there is another reason I hesitate to agree that Urban Development is entitled to an implied indemnity claim on the basis of its arguments. Contracts in the construction industry often contain indemnity clauses, and the importance of contractual indemnity cannot be ignored in this context. *See* Steven P. Soha, *A Study in Juristic Realism: The Historical Development and Interpretation of Construction Industry Indemnification Clauses in Washington*, 10 U. PUGET SOUND L. REV. 51 (1986-87). There may have been indemnification agreements between Urban Develop-

ment and its subcontractors, or, if not, at least these kinds of entities could enter contracts with such provisions. Urban Development settled its claims against the subcontractor who supplied and installed the allegedly defective siding system. This raises the question of whether the more reasonable recourse in circumstances like these is a claim against the subcontractor. It also raises the question of whether the settlement has any significance insofar as the indemnity claim is concerned. Generally speaking, in light of the questions raised above concerning express warranty claims under the UCC, and depending on the circumstances, it may be that the subcontractor is the more appropriate entity to bring an indemnification claim against the manufacturer.[8]

I do not agree that Urban Development is entitled to an implied indemnity claim under *Barbee*. I do not foreclose the possibility that indemnity may be appropriate in similar circumstances under another rationale than that argued here.

Finally, I add that even under the majority's analysis, Urban Development's implied indemnity claim is absolutely dependent on a breach of express warranty, and, as the Court of Appeals ruled, there are questions of fact that must be resolved as to whether Dryvit made and breached express warranties. This does not mean, of course, that Urban Development would actually have to prevail on an express warranty claim because it may be that the statute of limitations for such a claim has passed. As *Barbee* held, "indemnity actions accrue when the party seeking indemnity pays or is legally adjudged obligated to pay damages to a third party." *Barbee*, 133 Wn.2d at 517. However, Urban Development must show the existence of express warranties that were breached in order to show that an implied

---

[8] As the Court of Appeals noted, construction contracts are generally not governed by the UCC. *Urban Dev.*, 114 Wn. App. at 645 (citing *Arango Constr. Co. v. Success Roofing, Inc.*, 46 Wn. App. 314, 317-20, 730 P.2d 720 (1986) (citing *Christiansen Bros. v. State*, 90 Wn.2d 872, 877, 586 P.2d 840 (1978))). *See* U.C.C. § 9-2.

indemnity claim is appropriate on the ground that Dryvit should bear the ultimate burden of liability.

For the reasons stated, I dissent.

JOHNSON, J., concurs with MADSEN, J.