[No. 36691.   Department Two.   May 14, 1964.]

RONALD S. UDELL *et al., Appellants,* v. ROHM AND HAAS
COMPANY *et al., Respondents.**

*Palmer, Willis & McArdle,* for appellants.

*Cheney & Hutcheson,* by *Elwood Hutcheson* and *Gavin,
Robinson, Kendrick & Redman,* by *Leo C. Kendrick,* for
respondents.

FINLEY, J.—This is an action against two manufacturers
of chemical agricultural sprays to recover for damage to
an apple crop.  Liability is premised upon the acts of the
manufacturers' local representatives in advising the plain-
tiffs that the chemical sprays could safely be mixed and
used in one application to the apple trees.  A nonsuit was
granted at the close of the plaintiffs' evidence on the theory
that a "disclaimer of liability" provision printed on the
spray containers precluded liability, and this appeal fol-
lowed.

In the spring of 1958, Ronald Udell and Frank Buechler
(plaintiffs-appellants) discovered that coddling moth and
mildew were present in their respective apple orchards
and were rapidly becoming a problem.  Prior to the bloom
stage, the plaintiffs contacted a spray retailer in the area,
asking for recommendations as to materials that could be
used to control the infestation at an early stage.  The dealer

---

*Reported in 392 P. (2d) 225.

spoke of using *Karathane* (manufactured by defendant-respondent Rohm and Haas Company) for mildew control, and using *Diazinon* (manufactured by defendant-respondent Geigy Chemical Corporation) for coddling moth control. As the plaintiffs were unfamiliar with these chemicals, they asked the dealer to contact the representatives of the two manufacturers and ascertain whether their sprays were compatible and could be mixed together and used in the same spraying operation without damage to the crop.

The dealer contacted Samuel Lawrence, Rohm's field representative, and Larry Harman, Geigy's field representative, both of whom stated "there shouldn't be any problem" in mixing and applying the two spray materials together. There is evidence that both representatives knew the information was requested for apple growers who intended to apply the combination at *calyx* time, an early and relatively vulnerable stage in apple development. In making these statements, neither Lawrence nor Harman had any information on the subject outside of published compatibility charts which generally showed that the sprays could safely be mixed. The plaintiffs were apparently the first growers in anyone's knowledge to contemplate such an application of these particular products.

After this information or advice was conveyed to the plaintiffs, they purchased *Karathane* and *Diazinon* from the dealer. Udell applied the mixture to one third of his orchard, and Buechler to all of his. The Speed Sprayer that was used, by air blast, forces out the liquid spray through jets on both sides of the tank, covering one side of each tree row as the sprayer proceeds through the orchard. During the spraying operation, the north half of a row of trees belonging to the neighbor on the south was sprayed inadvertently. This occurred when the Speed Sprayer was turned at the south end of the Udell orchard without shutting down the spray stream. Thus, that neighbor had a row of trees with only approximately one half of each tree treated with the combination.

The record contains evidence that every Delicious apple tree that was sprayed with the combination of *Karathane*

and *Diazinon* suffered a drop of immature apples, resulting in a loss of all but about 5 per cent to 7 per cent of the crop. The Delicious trees in Udell's orchard which were not so sprayed bore a normal crop. As for the half-sprayed row of trees of the neighbor to the south, the sprayed north side of each tree bore only a few apples while the unsprayed south side had a normal yield.

The plaintiffs herein sought damages for both the 1958 drop loss and for losses of similar magnitude in 1960 brought about by an off-bearing cycle allegedly initiated by the 1958 spray damage.

The issues presented on this appeal are limited or delineated by the procedural posture of the case. The trial court deemed the evidence sufficient in all respects to carry the question of liability to the jury, but held that such liability was precluded as a matter of law by the liability disclaimer provisions on the printed label on each container of spray.

The notice of disclaimer of liability on the printed label of *Karathane* provided:

"NOTICE: The recommendations for this product are based on presently available information and are believed to be reliable. Seller makes no warranty of any kind, express or implied, concerning the use of this product. Buyer assumes all risk of the use, storage or handling, whether in accordance with directions or not."

The similar disclaimer notice on *Diazinon* provided:

"Since weather and other conditions under which this product may be used will vary, Geigy Agricultural Chemicals . . . and the seller, makes no warranty of any kind, express or implied, concerning the use of this product. The user assumes all risk of use or handling whether or not in accordance with directions or suggestions."

In so holding, the trial court mistakenly relied upon the decision of this court in *Gibson v. California Spray-Chemical Corp.* (1948), 29 Wn. (2d) 611, 188 P. (2d) 316. That case has been cited for the proposition that the acceptance of goods with notice that the manufacturer disclaims any warranty or liability prevents any recovery against the

manufacturer. As we noted in *Norway v. Root* (1961), 58 Wn. (2d) 96, 361 P. (2d) 162, we are not unaware of the many severe attacks presently being made on such a provision which purports to be a disclaimer of all implied warranties. A well documented treatment of the criticisms may be found in *Henningsen v. Bloomfield Motors, Inc.* (1960), 32 N.J. 358, 161 A. (2d) 69, 75 A.L.R. (2d) 1. Therein the attempted disclaimer of the implied warranty of merchantability is branded so inimical to the public good as to compel the adjudication of its invalidity.

■ However, the present case, like that in *Norway v. Root, supra,* is so readily distinguishable from the situation in *Gibson* as to render unnecessary a review of the *Gibson* doctrine. The action here is not based upon any warranty arising from the sale of the product, or any defect or negligence concerning the product itself. Rather, it is based upon the specific advise and direction of the manufacturers' agents (concerning a use of the product) beyond the scope or contemplation of the disclaimer provision. Had the products been combined in the absence of the knowledge and direction of the field representatives, no disclaimer provision would have to be considered to find the manufacturers free from liability. As the disclaimer would there be irrelevant, so is it here.

This conclusion is strengthened by a careful evaluation of the business practices in this area. The spray manufacturers, operating in a highly competitive market, maintain field representatives whose major function it is to advise and direct buyers in the potential use of their products. The growers rely heavily, perhaps conclusively, on the directions given. All parties, manufacturers, retailers and growers realize and intend that the counsels of the field representative be acted upon, and there is grave doubt that this flow of information to the mutual benefit of all is seriously hindered by the disclaimer clauses common in the industry.

We hold specifically that the disclaimer clause constitutes no bar to the potential recovery in the present case, and the trial court erred in granting a nonsuit on that basis. The

judgment must be reversed, and a new trial granted. It is so ordered.

OTT, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.