66 P.3d 625 (2003)
149 Wash.2d 204
TEX ENTERPRISES, INC., a Washington corporation, Respondent,
v.
BROCKWAY STANDARD, INC., a foreign corporation, Petitioner, and
J.F. Shelton Company, a Washington corporation, Defendant.
No. 72513-6.
Supreme Court of Washington, En Banc.
Argued February 11, 2003.
Decided April 17, 2003.
Forsberg & Umlauf, PS, John Hayes, Michael Hooks, Patrick Brady, Seattle, for Petitioner.
*626 David Grossman, Walla Walla, Kimberly Grieco, Lesourd & Patten, Lawrence Hard, Seattle, for Respondent.
OWENS, J.
A commercial purchaser seeks to recover economic damages from a manufacturer for breach of implied warranties under article 2 of the Uniform Commercial Code, Title 62A RCW (UCC). The plaintiff asserts that implied warranties arose out of the manufacturer's verbal assurances as to the quality of his product, made directly to the plaintiff. However, the plaintiff ultimately purchased the product from an intermediate distributor, not the manufacturer. Furthermore, an agreement between the manufacturer and the distributor contained a disclaimer of all warranties. Thus, absent privity between the plaintiff and the manufacturer and without reliance on the contract between the manufacturer and the distributor as a third-party beneficiary, we hold that such assurances do not give rise to implied warranties.

FACTS
Brockway Standard, Inc. (Brockway) is a Georgia corporation that manufactures three- and five-gallon unlined steel containers, treated only with a rust inhibitor. J.F. Shelton Company (Shelton) is a Washington distributor of Brockway products. Tex Enterprises, Inc. (Tex) is a Washington corporation that purchases three- and five-gallon containers in which it ships and stores Spantex, a liquid coating used to seal decks and other exterior surfaces. Brockway sells its containers to Shelton, who in turn sells them to Washington purchasers like Tex.
Shelton did not have a negotiated distributorship contract with Brockway. Generally, Shelton's practice was to place phone or fax orders for Brockway products, and Brockway would ship the goods and mail an invoice. On the back of the invoice, terms and conditions were printed which warranted only that the goods would be free from defects in workmanship and materials. The terms explicitly disclaimed all other warranties, express or implied, and limited damages to refund of the purchase price and cost of return shipping. An additional clause required that Georgia law govern the agreement. Although Shelton had received multiple invoices over the course of its relationship with Brockway, these terms were never negotiated, and Shelton was unaware of their existence until the inception of this lawsuit.
Similarly, Tex's practice was to place verbal orders with Shelton for Brockway products. No party has referred to any written agreement between Tex and Shelton. Furthermore, because Tex never ordered directly from Brockway, Tex was unaware of the disclaimer, remedy limitation clause, and choice of law clause printed on Brockway's invoices. No similar disclaimers or limitations were printed anywhere on Brockway products or their packaging, and Shelton never notified Tex that the disclaimers existed.
Prior to September 1997, Tex used Brockway one-gallon tin cans to store and ship Spantex, but used another company's three-and five-gallon steel containers. In September 1997, a Shelton representative (Mr. Garrett) and a Brockway representative (Mr. Egan) visited Tex's president (Mr. Pieratt), with the objective of persuading him to switch to Brockway three- and five-gallon containers for storing and shipping Spantex. Mr. Garrett and Mr. Egan toured the Tex facility and examined the containers that Tex was using. Mr. Egan told Mr. Pieratt that Brockway containers were "just as good" for storing Spantex as the containers Tex was using. Clerk's Papers (CP) at 148, 309. Furthermore, Mr. Egan arranged for Shelton to receive a "chargeback" (similar to a rebate) as an incentive to price the Brockway containers competitively and to facilitate the Tex deal. CP at 273, 298. Relying on these representations, Mr. Pieratt agreed to switch to Brockway containers. Ultimately, Tex purchased 4,800 Brockway containers in which it stored and shipped more than 22,000 gallons of Spantex to its customers.
In the spring of 1998, Tex began to receive complaints from retail and consumer customers. The Spantex that was stored in the three- and five-gallon Brockway containers had begun to thicken and solidify, rendering it useless. Tex claims that the problem was *627 caused by a reaction between the Spantex and the rust inhibitor with which the containers were treated. Tex expected that its costs for replacing the ruined Spantex would exceed $440,000.
Tex sued both Brockway and Shelton, claiming that it was entitled to recovery under a variety of theories including breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and breach of contract (against Shelton only). Tex sought to recover its costs for replacing the ruined product, incidental and consequential damages, disposal costs, and attorney fees. Shelton settled with Tex and is no longer a party to this lawsuit.
Brockway responded that the language on its invoices limited the claims and remedies available to Tex. In multiple orders, the trial court applied Georgia law and eventually dismissed all claims based upon the disclaimers printed on the Brockway invoices and lack of privity. Tex Enters., Inc. v. Brockway Standard, Inc., 110 Wash.App. 197, 200, 39 P.3d 362 (2002).
The Court of Appeals agreed that any third-party beneficiary claims would depend upon Shelton's agreement with Brockway, which was limited by the language on Brockway's invoices. See Tex Enters., 110 Wash. App. at 202, 39 P.3d 362. Still, the court reversed and remanded, holding instead that "direct representations to the purchaser can create express and implied warranties that run to the purchaser independent of any contract between the manufacturer and distributor." Id. at 199, 39 P.3d 362 (emphasis added).
Brockway petitioned for review only on the limited question of whether, as a matter of law, an implied warranty can arise from a manufacturer's direct representation to a remote commercial purchaser, without reliance on an underlying contract as a third-party beneficiary.

ISSUE
Can an implied warranty arise from a manufacturer's direct representation to a remote commercial purchaser, absent a contract between the parties or reliance as a third-party beneficiary on the contract between the manufacturer and its immediate buyer?

ANALYSIS
When reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. M.A. Mortenson Co. v. Timberline Software Corp., 140 Wash.2d 568, 577-78, 998 P.2d 305 (2000). Thus, we must affirm the trial court's summary judgment on this issue if we determine that there is no genuine issue of material fact and Brockway is entitled to judgment as a matter of law. See id. The facts and reasonable inferences from the facts must be considered in the light most favorable to Tex as the nonmoving party. See id.
Article 2 of the UCC, as adopted in Washington, governs warranties arising from the sale of goods. RCW 62A.2-313, -318. Unless excluded or modified, a warranty that goods are merchantable "is implied in a contract for their sale," so long as the seller is a "merchant with respect to goods of that kind." RCW 62A.2-314(1). This implied warranty of merchantability assures that the goods "are fit for the ordinary purposes for which such goods are used." RCW 62A.2-314(2)(c). Similarly, unless excluded or modified, an implied warranty of fitness for a particular purpose arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." RCW 62A.2-315.
RCW 62A.2-316 allows exclusion or modification of implied warranties so long as the limiting language meets the formal requirements of that section. See RCW 62A.2-316(2), (3). RCW 62A.2-719 also allows sellers to limit available remedies to the return of the goods and repayment of the purchase price or to repair and replacement of the goods. These provisions provide one method for sellers to limit their liability under the UCC.
In addition, lack of privity has historically been a defense to claims of breach *628 of warranty. There are two types of plaintiffs for whom lack of privity has been a concern. A "`horizontal' non-privity plaintiff" is not a buyer of the product in question, but is one who consumes or is affected by the goods. JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 11-2, at 399 (5th ed.2000). The "`vertical' non-privity plaintiff" is a buyer who is in the distributive chain, but who did not buy the product directly from the defendant. Id.; see also Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc., 119 Wash.2d 334, 344, 831 P.2d 724 (1992). Tex is a vertical nonprivity plaintiff.
By adopting alternative A of section 2-318 of The American Law Institute, Uniform Commercial Code 1972 Official Text, the Washington Legislature chose to eliminate the privity requirement for horizontal nonprivity plaintiffs under certain circumstances.[1]Compare RCW 62A.2-318 with THE AMERICAN LAW INSTITUTE, supra, § 2-318. UCC comment 3 to section 2-318, as adopted in Washington, notes that this provision is silent with regard to vertical privity, but the section "is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." RCWA 62A.2-318 U.C.C. cmt. 3, at 207 (purpose); see also RCWA 62A.2-318 Wash. cmt. at 206 (noting comment 3 is emphatic that the section was intended to be neutral with regard to vertical privity). Thus, questions regarding the extension of warranties to vertical nonprivity plaintiffs are left to the courts.
In Baughn v. Honda Motor Co., 107 Wash.2d 127, 727 P.2d 655 (1986), this court upheld a trial court's summary judgment order in favor of a manufacturer, dismissing the remote purchasers' claims for breach of implied warranty. Id. at 151-53, 727 P.2d 655. The Baughn court adopted the traditional rule that a plaintiff may not bring an implied warranty action under the UCC without contractual privity. Id. at 151, 727 P.2d 655. It is important to note that the Baughn court would have allowed a plaintiff's express warranty claim to proceed because "[t]he privity requirement is relaxed ... when a manufacturer makes express representations, in advertising or otherwise, to a plaintiff." Id. at 151-52, 727 P.2d 655.[2]
A few years later in Touchet Valley, this court created an exception to the privity requirement for implied warranties. The Touchet Valley court allowed a vertical nonprivity plaintiff to recover where the plaintiff was the intended third-party beneficiary of the implied warranty that the manufacturer gave to its intermediate dealer. Touchet Valley, 119 Wash.2d at 345-47, 831 P.2d 724 (relying on Kadiak Fisheries Co. v. Murphy Diesel Co., 70 Wash.2d 153, 422 P.2d 496 (1967)). Notably, the Touchet Valley court did not overturn Baughn. Id. at 346, 831 P.2d 724. Instead, it distinguished Baughn based in part on the fact that the "the analysis was not based on a third party beneficiary argument." Id. Thus, we conclude that Touchet Valley carved a third-party beneficiary exception out of the general rule that a vertical nonprivity plaintiff cannot recover from a remote manufacturer for breach of implied warranty.
The Court of Appeals in this case held that a manufacturer's direct verbal representations to a remote purchaser can create express and implied warranties that run to the remote purchaser, independent of any contract between the manufacturer and the intermediate distributor. Tex Enters., 110 Wash.App. at 199, 39 P.3d 362. However, allowing implied warranties to arise without reliance on an underlying contract is inconsistent with both the plain language of RCW 62A.2-314 and -315 and this court's prior approach to implied warranties.
First, the plain language of both RCW 62A.2-314 and -315 requires that implied warranties only arise out of contractual relationships. RCW 62A.2-314 states that the *629 warranty that goods shall be merchantable is "implied in a contract for their sale." Similarly, RCW 62A.2-315 explains that the implied warranty of fitness for a particular purpose arises based on the seller's understanding "at the time of contracting." This language can be contrasted with RCW 62A.2-313 (express warranties), the language of which does not refer to an underlying "contract." Thus, the plain meaning of this statutory language forecloses application of implied warranties where there is no underlying contract to which the purchaser is a party or an intended third-party beneficiary.
In addition, Tex has failed to cite to any case in which this court has allowed a vertical nonprivity plaintiff to recover economic damages for breach of implied warranty without reliance on some underlying contract. Such a restriction is justified because, to be enforceable, contractual relationships under the UCC must be formed according the code's safeguards, making contractual relationships comparatively formalized. See, e.g., RCW 62A.2-201 (statute of frauds). In contrast, express representations, made in advertisements or otherwise, require no formalities.[3] Thus, we recognize that allowing implied warranties to arise out of express representations could leave a manufacturer unable to adequately predict when implied warranties will attach.
This court has also distinguished between express and implied warranties, restricting recovery for breach of implied warranty where it would have allowed recovery for breach of express warranty. See Baughn, 107 Wash.2d at 151-52, 727 P.2d 655. Because implied warranties arise by operation of law without specific adoption by the seller, we recognize that such warranties must be more closely guarded than express warranties, whose adoption requires some voluntary action. Accord Dravo Equip. Co. v. German, 73 Or.App. 165, 698 P.2d 63, 65 (1985); Fundin v. Chi. Pneumatic Tool Co., 152 Cal. App.3d 951, 199 Cal.Rptr. 789, 793-94 n. 1 (1984).
The combination of the plain language of the statutory scheme and this court's prior treatment of implied warranties overcomes the reasoning of the Court of Appeals in this case. To support its conclusion, the Court of Appeals relied first upon Dobias v. Western Farmers Ass'n, 6 Wash.App. 194, 491 P.2d 1346 (1971), in which the manufacturer of an herbicide made representations to Western Farmers salesmen about its product's compatibility with corn. Tex Enters., 110 Wash. App. at 202, 39 P.3d 362. The salesmen in turn communicated that representation to farmers. Dobias, 6 Wash.App. at 195-96, 491 P.2d 1346. Although the Dobias court ultimately held the manufacturer liable to the plaintiffs, it never clearly based the manufacturer's liability on implied warranties. Id. at 199, 491 P.2d 1346 (citing Udell v. Rohm & Haas Co., 64 Wash.2d 441, 392 P.2d 225 (1964)).[4] Thus, reliance on Dobias for the proposition that implied warranties may arise out of a remote manufacturer's representations is tenuous at best. Furthermore, the Court of Appeals failed to recognize this court's subsequent adoption of the traditional privity rule for vertical implied warranty plaintiffs. Baughn, 107 Wash.2d at 151, 727 P.2d 655.
The Court of Appeals also adopted the reasoning of the Florida Court of Appeals in Cedars of Lebanon Hospital Corp. v. European X-Ray Distributors of America, Inc., 444 So.2d 1068 (Fla.Ct.App.1984), a case involving fact pattern similar to this one. Tex Enters., 110 Wash.App. at 203, 39 P.3d 362. The Cedars court reasoned that it would be "fundamentally unfair ... to allow the manufacturer *630 to hide behind the doctrine of privity when the product, which it induced the purchaser to buy, turns out to be worthless." Cedars, 444 So.2d at 1072. The Cedars court also hoped to avoid prolonged indemnity litigation, gradually advancing up the chain of privity. Id. However, both of these concerns are easily alleviated where the plaintiff is allowed to pursue a claim under breach of express warranty, something that Washington law clearly allows in this case. Baughn, 107 Wash.2d at 151-52, 727 P.2d 655. Therefore, we find the Cedars reasoning unconvincing.
It is important to note that Tex and future vertical nonprivity plaintiffs are not left without recourse. We emphasize that this court has already clearly established that the privity requirement is relaxed where a manufacturer makes express representations to a plaintiff. Baughn, 107 Wash.2d at 151-52, 727 P.2d 655. In fact, the issue of whether an express warranty was made in this case still remains to be decided by the trial court. Furthermore, because Brockway has correctly conceded that Tex's express warranty claims are not dependent upon the Brockway-Shelton contract, there is no question that Washington law governs the determination of whether Brockway's statements amounted to an express warranty. Finally, where a commercial plaintiff can show that it is the intended third-party beneficiary of a contract between the manufacturer and its direct purchaser, recovery may be available under a third-party beneficiary analysis.[5]See Touchet Valley, 119 Wash.2d at 345-47, 831 P.2d 724.
For all of the reasons discussed above, we hold that implied warranties do not arise out of express representations made by a manufacturer to a remote commercial purchaser absent privity or reliance on some underlying contract.

CONCLUSION
We reverse the Court of Appeals with regard to the implied warranty claim and hold that in cases where a commercial purchaser seeks to recover economic damages from a remote manufacturer, implied warranties do not arise absent privity or an underlying contract to which the remote commercial purchaser is a third-party beneficiary.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, FAIRHURST, JJ.
NOTES
[1] RCW 62A.2-318 allows recovery for certain horizontal nonprivity plaintiffs who are injured "in person by breach of the warranty."
[2] The Baughn court ultimately held that the manufacturer's representations in that case were merely opinions or commendations, not rising to the level of express warranties. Baughn, 107 Wash.2d at 152, 727 P.2d 655.
[3] To recover for breach of express warranty, a plaintiff must show that the representation was not "merely the seller's opinion or commendation of the goods." RCW 62A.2-313(2). When compared to the determination of whether a contract exists under article 2 of the UCC, the determination of whether an express warranty was made is relatively inexact, depending upon numerous factors. See, e.g., Fed. Signal Corp. v. Safety Factors, Inc., 125 Wash.2d 413, 424-25, 886 P.2d 172 (1994) (considering several factors).
[4] Instead, the Dobias court relied on Udell, a case in which the court blamed the bad advice of the manufacturers' agents, something which the Udell court characterized as being distinct from warranties as to the quality of the product itself. Udell, 64 Wash.2d at 444, 392 P.2d 225; Dobias, 6 Wash.App. at 199, 491 P.2d 1346.
[5] The Court of Appeals, without discussion, concluded that the disclaimers and limitations contained in the Brockway-Shelton agreement would extend to Tex under a third-party beneficiary analysis. See Tex Enters., 110 Wash.App. at 202, 39 P.3d 362. Because our resolution of the limited question in this case does not require us to decide this issue, we decline to do so here.