FILED
COURT OF APPEALS
DIVISION II

2015 FEB 24 AM 9: 24

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CHUCK BABB, an individual, | No. 43934-4-II |
| Appellant, | |
| v. | |
| REGAL MARINE INDUSTRIES, INC., a foreign corporation, | UNPUBLISHED OPINION ON REMAND |
| Respondent. | |

JOHANSON, C.J. — On remand, our Supreme Court asks us to determine whether Chuck Babb's claim for breach of implied warranty of merchantability against Regal Marine Industries, Inc. (Regal) is precluded by the lack of contractual privity between Babb and Regal. We hold that Babb's implied warranty claim is precluded because Babb is a "vertical nonprivity plaintiff" and he was not an intended third-party beneficiary of the contract between Regal and Powerboats NW (PBNW), the dealer from whom Babb purchased the boat. Accordingly, we affirm the summary dismissal of Babb's implied warranty claim.

FACTS

In 2007, Babb shopped for a new boat, researching the boat market and reading product reviews which, according to Babb, rated Regal positively. Babb visited a local boat dealership, PBNW, where he purchased a Regal. By the terms of a contract between PBNW and Regal, PBNW was an authorized Regal dealer.

Regal provides a limited warranty for its boats. The warranty specifies that the dealer will repair or replace any defective parts for one year from delivery. But the warranty lists exceptions not covered: engines, aftermarket accessories, gelcoat surfaces, damage caused by user negligence, accident, or misuse, among others. The boat's Volvo engine had its own warranty.

Babb received his new Regal boat in July 2007. According to Babb, when he first used it, he noticed that it "ran rough" and had a "vibration." Clerk's Papers (CP) at 120, 352. In October 2007, Babb first called Regal and spoke with customer service representative Chuck Rainey, who provided information to Babb about how Babb could repair the boat himself. According to Babb, Rainey also reassured him that Regal would correct any issues with the boat.

Over the 2007 to 2008 winter, Babb stored his boat, and in spring 2008, his son-in-law, Shane Hagen, used it. Hagen reported that the boat "repeatedly stalled and had to be towed back into shore." CP at 120. Babb phoned Rainey again in July 2008, and Rainey told Babb to take the boat to CSR Marine, a repair shop, and to tell them that Rainey "ok'ed it." CP at 120. Rainey also sent Babb a new wake board tower for his boat when Babb reported that the existing tower had broken welds.

CSR Marine inspected Babb's boat and informed Babb that the boat's engine had a small engine head crack caused by freeze damage. Babb phoned Regal again in December 2008,

indicating that he needed to repair his boat and that his dealer, PBNW, had gone bankrupt. He spoke with Regal Manager of Customer Service, Mark Skrzypek, and explained the cracked engine head. Skrzypek informed Babb that he believed that the cracked engine was caused by improper winterization not a manufacturing defect. Skrzypek convinced CSR to reduce the storage fees it had charged Babb, but told Babb that Regal's warranty did not cover the Volvo engine.

Dissatisfied when Skrzypek advised him that Regal would not cover the engine repairs, Babb sued Regal on numerous grounds, including a Consumer Protection Act, ch. 19.86 RCW (CPA), violation, and breach of express and implied warranties, among others. And regarding implied warranties, Babb claimed that he never waived any implied warranties and that Regal is liable because he "never received a warranty packet that specifically identifies his boat and the coverage he is entitled to." CP at 115.

The trial court granted summary judgment in favor of Regal on each of Babb's claims. Babb appealed, and we affirmed the summary dismissal of his claims for CPA violations and breach of express warranties. *Babb v. Regal Marine Indus., Inc.*, noted at 179 Wn. App. 1036, *remanded*, 180 Wn.2d 1021 (2014). But we reversed the trial court's order dismissing Babb's claim that Regal breached implied warranties because there was no evidence in the record to demonstrate that Babb had negotiated a waiver of those claims.

On remand from our Supreme Court, we are asked to determine whether Babb's claim that Regal breached its implied warranty of merchantability is precluded by the lack of contractual privity between Babb and Regal. *Babb*, noted at 180 Wn.2d 1021.

ANALYSIS

Babb does not dispute that contractual privity is required to maintain a claim for breach of an implied warranty of merchantability. Rather, Babb argues that (1) he has satisfied the privity requirement by virtue of the sales invoice that identifies Regal as a party to the agreement, or (2) because he is an independent third party beneficiary of the contract between Regal and PBNW, an exception to the privity requirement applies. We hold that Babb's claim for breach of implied warranty of merchantability is precluded by his lack of contractual privity with Regal.

Article 2 of the UCC, as adopted in Washington, governs warranties arising from the sale of goods. RCW 62A.2-313, .2-318. Unless excluded or modified, a warranty that goods are merchantable "is implied in a contract for their sale" so long as the seller is a "merchant with respect to goods of that kind." RCW 62A.2-314(1). This implied warranty of merchantability assures that the goods "are fit for the ordinary purposes for which such goods are used." RCW 62A.2-314(2)(c); *Tex Enters., Inc. v. Brockway Standard, Inc.*, 149 Wn.2d 204, 208, 66 P.3d 625 (2003).

Lack of contractual privity has historically been a defense to claims of breach of warranty. *Tex Enters.*, 149 Wn.2d at 209. The "vertical" nonprivity plaintiff is a buyer who is in the distributive chain, but who did not buy the product directly from the defendant. *Tex Enters.*, 149 Wn.2d at 209. Our Supreme Court has upheld dismissals of remote purchasers' claims for breach of implied warranties of merchantability where privity between purchaser and manufacturer was absent. *Tex Enters.*, 149 Wn.2d at 214; *see also Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 151, 727 P.2d 655 (1986) (disallowing claims for implied warranties under the UCC where purchaser of motorcycle sued manufacturer rather than dealer).

Here, Babb contracted to purchase his boat from PBNW, not from Regal directly. Accordingly, Babb is a vertical nonprivity plaintiff because he is a buyer in the distributive chain but who did not buy the product directly from the defendant. *Tex Enters.*, 149 Wn.2d at 209.

## A. DIRECT PRIVITY

Nonetheless, Babb argues that privity between he and Regal exists because (1) the sales invoice issued by PBNW identifies Regal as a party to the agreement, and (2) neither PBNW, Babb, nor Regal signed the invoice's waiver of implied warranties. Babb contends that had he signed that waiver, Regal would have argued that Babb made a conscious waiver of the implied warranties, and in doing so, Regal would implicitly recognize the existence of privity between the two parties.

First, Babb does not cite to the record to substantiate his claim that the sales invoice issued by PBNW identifies Regal as a party to the agreement. Instead the record shows that the invoice simply names Regal as the maker of the boat. Nothing in these documents establishes that Regal was party to the contract between Babb and PBNW.

Second, Babb's argument about the waiver of the implied warranties rests on speculative assertions regarding a hypothetical scenario. We do not address hypothetical questions. Instead, we conclude that Babb had no contractual relationship with Regal and, therefore, no privity with Regal. To allow implied warranties to arise without reliance on an underlying contract is inconsistent with our court's prior approach to implied warranties. *Tex Enters.*, 149 Wn.2d at 211. This is evident because "the plain language of both RCW 62A.2-314 and -315 requires that implied warranties only arise out of contractual relationships." *Tex Enters.*, 149 Wn.2d at 211. We reject Babb's attempt to establish direct privity for the forgoing reasons.

5

B. THIRD PARTY BENEFICIARY

Babb next argues that Regal is responsible for breach of its implied warranty of merchantability because Regal was obligated to process warranty claims brought by the dealership's customers. In Babb's view, this fact entitles him to recovery as an intended third-party beneficiary of the contract between Regal and PBNW. We disagree. Babb is not an intended third-party beneficiary under the "sum of the interaction" test for purposes of his claim for breach of the implied warranty of merchantability.

Although lack of contractual privity is ordinarily a defense to a claim for breach of implied warranty of merchantability, our Supreme Court has created an exception to the requirement. *Tex Enters.*, 149 Wn.2d at 210. Specifically, our courts have allowed a remote purchaser to pursue claims for breach of implied warranties of merchantability notwithstanding lack of vertical privity when the remote purchaser can show that it was an intended third-party beneficiary of a contract involving the manufacturer. *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 347, 831 P.2d 724 (1992). Our courts apply the "sum of the interaction" test essentially to determine whether the manufacturer was sufficiently involved in the transaction (including post-sale) with the remote purchaser to warrant enforcement of an implied warranty. *Touchet Valley*, 119 Wn.2d at 345-47.

In support of his position that he was an intended third-party beneficiary of the contract between Regal and PBNW, Babb relies on *Lidstrand v. Silvercrest Industries*, 28 Wn. App. 359, 365, 623 P.2d 710 (1981), where Division One of this court held that warranties made by a mobile home manufacturer extended to subsequent purchasers of the home as intended third party beneficiaries notwithstanding a lack of contractual privity between the parties. Importantly,

however, *Lidstrand* involved express warranties. 28 Wn. App at 363. And our courts have long recognized that the privity requirement is relaxed when the claims involve a manufacturer's express representations rather than those implied warranties that arise automatically by operation of a sale. *See Tex Enters.*, 149 Wn.2d at 212 (explaining that implied warranties are more "closely guarded" because, unlike express warranties, they arise by operation of sale with no voluntary action); *Baughn*, 107 Wn.2d at 151-52. Babb has cited no authority to support his claim against Regal for breach of implied warranty.

Babb does not argue that he is an intended third-party beneficiary under the "sum of the interaction" between the parties, but even when we apply the test, Babb's claim fails nonetheless.

Our Supreme Court first applied the test to a claim for a breach of an implied warranty of merchantability in *Touchet Valley*. There, the *Touchet Valley* court examined *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 70 Wn.2d 153, 422 P.2d 496 (1967). In *Kadiak*, our Supreme Court held that a purchaser of a specially-built marine diesel motor could sue the manufacturer for breach of implied warranties even though the purchaser bought the diesel motor from a retail dealer. 70 Wn.2d at 165. The *Kadiak* court relied on the sum of the interaction and the expectations between the purchaser and the manufacturer: (1) the manufacturer knew the identity, purposes, and requirements of the purchasers' specifications; (2) Kadiak had communicated its needs to the manufacturer, not only directly, but also through its agent, the supplier; (3) although the manufacturer invoiced the supplier, the manufacturer delivered the motor directly to Kadiak; (4) the manufacturer's representatives attended installation of the motor; and (5) after difficulties developed, the manufacturer tried to fix the motor's problem. 70 Wn.2d at 164-65.

Applying *Kadiak*'s reasoning, the *Touchet Valley* court concluded that the owner of a collapsed grain-storage facility could maintain an implied warranty action against a subcontractor with whom there was no privity because the owner was the intended third-party beneficiary of the contract between the general contractor and the subcontractor. *Touchet Valley*, 119 Wn.2d at 337, 347. In so holding, the *Touchet Valley* court determined that the subcontractor knew Touchet Valley's identity, its purpose, and its requirements for the storage building. 119 Wn.2d at 346. The subcontractor had also designed the building to the purchaser's specifications and delivered components to the construction site. *Touchet Valley*, 119 Wn.2d at 346-47. And when the building first began to collapse, the subcontractor helped to attempt repairs. *Touchet Valley*, 119 Wn.2d at 347.

In contrast, in *Urban Development, Inc. v. Evergreen Building Products, LLC*, 114 Wn. App. 639, 648, 59 P.3d 112 (2002), *aff'd sub nom. by Fortune View Condominium Ass'n v. Fortune Star Development Co.*, 151 Wn.2d 534, 90 P.3d 1062 (2004), Division One of this court declined to extend implied warranties of merchantability to a general contractor of a leaking condominium complex when there was no privity of contract between the general contractor and the manufacturer of the building's siding. The court there so held because the general contractor had no interaction with the siding manufacturer and because the manufacturer did not design the siding system specifically for the contractor's requirements. *Urban Dev.*, 114 Wn. App. at 648.

Here, Regal did not know Babb's identity or his purpose nor did it build the boat specifically with his requirements in mind. Rather, Regal merely built a version of one of its ostensibly ordinary models at its headquarters in Florida, and then sold and shipped that boat to

one of its dealers in Arizona. Ultimately, PBNW arranged delivery to its location, where Babb made his purchase.

After he began to experience trouble with his boat, and once he determined that PBNW had gone bankrupt, Babb had a series of contacts with Regal. According to Babb, Regal representatives assured him that they would take care of his problems. Regal then sent Babb a new wake board tower and instructed Babb to take his boat to a marine repair shop presumably to conduct repairs with Regal's permission. But the record does not establish that the repair shop ever did any work on Babb's boat with or without Regal's approval. Instead, when the result of the repair shop's investigation revealed a broken engine, it appears from the record that although Regal offered to assist in obtaining parts at wholesale cost, it otherwise refused to cover any repair costs because the engine had a separate warranty through its own manufacturer.

Accordingly, aside from the replacement of his wake board tower,[1] the extent of the interaction between Regal and Babb was a series of post-sale phone calls related to the repair of a boat that Regal did not build specifically for Babb. The facts here are distinguishable from those in *Kadiak* and *Touchet Valley*. Consequently, we hold that Babb's claim for breach of implied warranty of merchantability fails as a matter of law because there is no privity between Babb and Regal and because Babb was not an intended third-party beneficiary of the contract between Regal and PBNW.

---

[1] It does not appear as though the wake board tower was covered by Regal's express warranty either. Rather, it seems likely that replacement of that item was merely an act of good will on the part of Regal.

No. 43934-4-II

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

Johanson, C.J.

JOHANSON, C.J.

We concur:

WORSWICK, J.

BJORGE, J.

10