IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ROBERT MIELKE and TERRI MIELKE, husband and wife,

                Appellants,

        v.

TACOMA RV CENTER, INC., a Washington Corporation; LADONNA MEADOWS and JOHN DOE MEADOWS, husband and wife and the marital community composed thereof; US BANK NATIONAL ASSOCIATION, a Washington financial institution; AMERICAN GUARDIAN WARRANTY SERVICES, INC., a foreign corporation; DURATAIN, a Washington corporation; and CONTRACTORS BONDING AND INSURANCE COMPANY, a foreign insurance company,

                Defendants,

KEYSTONE RV COMPANY, a foreign corporation;

                Respondent.

No. 85663-4-I

DIVISION ONE

UNPUBLISHED OPINION

CHUNG, J. — The Mielkes sued Keystone RV, the manufacturer of their recreational vehicle (RV), for breach of warranties, violations of chapter 46.70

RCW,[1] the Consumer Protection Act (CPA),[2] and the Uniform Commercial Code (UCC),[3] and for other wrongful conduct. Keystone moved for summary judgment, which the court granted, dismissing the Mielkes' claims. The Mielkes moved for reconsideration, as well as for CR 11 sanctions and fees, claiming Keystone made false and misleading claims that were material to the trial court's summary judgment decision. The court denied their motion. The Mielkes appeal the court's decisions granting summary judgment and denying sanctions and fees. Finding no error, we affirm.

FACTS

Robert and Terri Mielke bought a RV from Tacoma RV in April 2019. Keystone RV Company of Goshen, Indiana, manufactured the RV. In October 2019, Keystone e-mailed the Mielkes about a low score they had given it in a survey. Robert[4] replied and wrote that he had concerns about mold in the RV's leaky fridge, its freezer, its leveling jacks, its power system, a torn screen, frayed blinds, its toilet, its oven, and leaks. The next day he wrote there was "water on the floor from LEAKS," and that Keystone "must get back to me ASAP" or he would "call a[n] attorney."

A Keystone supervisor responded the same day and instructed the Mielkes to "[p]lease proceed through an authorized dealership" in order to utilize

---

[1] Ch. 46.70 RCW has no short title. The parties refer to it as the "Auto Dealers Act" or "ADA."

[2] Chapter 19.86 RCW.

[3] Title 62A RCW.

[4] Because the Mielkes share a last name, we refer to them individually by first name only. No disrespect is intended.

Keystone's "One Year Limited Warranty." The supervisor asked the Mielkes to "please provide your direct point of contact at the dealership, so that we can work with the dealership to have any warrantable concerns rectified." In November 2019, the Mielkes e-mailed Keystone that they had an "increasing list of issues." The next day, Keystone answered, apologized, and again recommended "contacting an authorized dealership." Robert testified at his deposition that at that time, he did not contact anybody.

The next summer, in June 2020, the Mielkes took their RV to Tacoma RV, the authorized dealership from which they bought it, for service. The dealership had just reopened after being closed for six weeks due to the COVID-19 pandemic. Three different Tacoma RV work orders show "warranty" work done in June and July 2020. This work included replacing molding and seals to address water leaks, checking for moisture, mold, and water damage, fixing a "dropped" slide floor, and repainting chipped paint.

In September 2020, the Mielkes sued Keystone, Tacoma RV, the dealership's owner, the bank that financed their purchase, and three other parties associated with their purchase. Their complaint alleged negligence, breach of contract, breach of warranties, violations of chapter 46.70 RCW, the CPA, the UCC, and other wrongful conduct.

In September 2021, Keystone moved for summary judgment to dismiss all the Mielkes' claims against it. The court granted Keystone's motion. The Mielkes moved for reconsideration. The motion for reconsideration included a motion for

fees and sanctions under CR 11. The court denied both motions. In August 2023, after the Mielkes' claims against all parties were either dismissed or settled, the court entered final judgment. The Mielkes timely appeal.

DISCUSSION

The Mielkes assign error to the court's orders granting Keystone's motion for summary judgment and denying their CR 11 motion for fees and sanctions.[5] They also seek fees on appeal.

I.    Summary Judgment Dismissal of Claims

Summary judgment is reviewed de novo, and we engage in the same analysis as the trial court. Borton & Sons, Inc. v. Burbank Props., LLC, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR 56(c)).

We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012). But the nonmoving party "may not rest upon the mere allegations or denials of a pleading" and "must set forth specific facts showing that there is a genuine issue for trial." CR 56(e). "A genuine issue of material fact

---

[5] The Mielkes also assign error to the court's order denying their motion for reconsideration. However, there is no argument separate from their assignment of error to the court's denial of their motion for sanctions, which was contained within their motion for reconsideration. Assignments of error not briefed are waived. Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992).

exists where reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

While the Mielkes stated below that they had not "neglected or abandoned" any claims, on appeal, they fail to provide sufficient argument for their negligence, negligent hiring or supervision, breach of contract, and rescission claims. "This court will not consider claims insufficiently argued by the parties." State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).[6] Below, it was the Mielkes' obligation as the nonmoving party to set forth specific facts, but they pointed only to their "25-page complaint [that] includes citations to cases, statutes, regulations, all of which support the four claims that [Keystone is] seeking to dismiss." On summary judgment, the nonmoving party cannot "rest upon the mere allegations . . . of a pleading." CR 56(e).

Moreover, the claims of breach of contract, rescission, implied duty of good faith and fair dealing, and UCC implied warranty of merchantability all require contractual privity.[7] However, the record here does not contain any evidence of contractual privity between the Mielkes and Keystone.

---

[6] The Mielkes' reply brief on appeal presents as "Other Claims By Keystone In Its Response" 10 issues that are either discussed elsewhere or are being raised for the first time here on appeal. This court does not address matters raised for the first time in reply briefs. RAP 10.3(c); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[7] "[T]he duty [of good faith and fair dealing] arises only in connection with terms agreed to by the parties." Badgett v. Sec. State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991), quoted in Rekhter v. Dep't of Soc. & Health Servs., 180 Wn.2d 102, 113, 323 P.3d 1036 (2014). "[I]mplied warranties do not arise out of express representations made by a manufacturer to a remote commercial purchaser absent privity or reliance on some underlying contract." See Tex Enters., Inc. v. Brockway Standard, Inc., 149 Wn.2d 204, 214, 66 P.3d 625 (2003). And a rescission claim

Because the Mielkes neither "set forth specific facts showing that there [was] a genuine issue [of fact] for trial," as required by CR 56(e), nor provided supporting argument on appeal as to some of the claims, we conclude the trial court properly granted summary judgment dismissing the claims of negligence, negligent hiring or supervision,[8] breach of contract, rescission, breach of implied duty of good faith and fair dealing, and breach of implied warranty of merchantability.

We address the Mielkes' claims for breach of express warranty, violations of chapter 46.70 RCW, and the CPA below.

### A.    Breach of Express Warranty

The Mielkes "allege that Keystone's one-year warranty failed of its 'essential purpose' in curing numerous defects known to it, thus depriving the Mielkes of the use and benefit of their RV." Keystone argues that the Mielkes have not shown it either breached its warranty or that its warranty fails of its essential purpose. We agree with Keystone.

An express warranty is a warranty created by "[a]ny affirmation of fact or promise made by the seller" or "[a]ny description of the goods which is made part

---

would require the Mielkes to show that they bought their RV directly from Keystone. See RCW 62A.2-103(1)(a), (d).

[8] There is also no evidence in the record that Keystone knew or should have known its employees were unfit when it hired them or acted outside the scope of their employment. See Carlsen v. Wackenhut Corp., 73 Wn. App. 247, 252-53, 868 P.2d 882 (1994) (negligent hiring requires proof that employer knew or should have known employee was unfit upon hiring); Briggs v. Nova Servs., 135 Wn. App. 955, 966-67, 147 P.3d 616 (2006) (negligent supervision requires proof that the employee acted outside the scope of their employment) (citing Niece v. Elmview Grp. Home, 131 Wn.2d 39, 48, 929 P.2d 420 (1997)).

of the basis of the bargain." RCW 62A.2-313. See also BLACK'S LAW DICTIONARY 1903 (11th ed. 2019) (An express warranty is "[a] warranty created by the overt words or actions of the seller."). "A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 525, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992). A manufacturer can also be liable if an express warranty fails of its essential purpose. "[A]n exclusive limited remedy fails of its essential purpose when there are unreasonable delays in providing the remedy or the party required to provide the remedy is unable to do so." Am. Nursery Prods., Inc. v. Indian Wells Orchards, 115 Wn.2d 217, 228, 797 P.2d 477 (1990). "An exclusive remedy has also been held to fail of its essential purpose when the party required to provide the remedy, by action or inaction, causes the remedy to fail or when defects in goods are not discoverable upon reasonable inspection." Id.

Keystone's owner's manual includes a "One-Year Limited Base Warranty" that "covers this RV for a period of one (1) year from the date of purchase by the first retail owner." More specifically, the warranty covers "defects in materials and workmanship . . . attributable to Keystone's manufacturing and assembly . . . when the RV is used solely for its intended purposes of recreational camping." The owner's manual explains that by "defect," Keystone means "the failure of the workmanship performed and/or materials used to conform with the design and manufacturing specifications and tolerances of Keystone."

On the other hand, the warranty does not cover "damage" that is "caused by such things as collision, misuse, or lack of maintenance that occurs after the RV is delivered." The warranty lists eighteen exclusions, including use for "business, rental, residential, commercial, or disaster relief purposes, or any purposes other than recreational travel and family camping."

Finally, the warranty states prominently in boldface and capital letters that it "**ONLY SETS FORTH WHAT KEYSTONE WILL DO IF A DEFECT EXISTS AND DOES NOT GUARANTEE ANYTHING ABOUT THE RV FOR ANY TIME PERIOD.**" Keystone's "sole and exclusive obligation [under the warranty] will be to repair the defect." To obtain warranty service, Keystone recommends an owner "first contact [their] local selling dealer" because "the Keystone dealer network is the exclusive provider of Parts, Service and Warranty for Keystone."

Here, the record includes three work orders showing that Tacoma RV, an authorized Keystone RV dealer, performed service work on the Mielkes' RV in late June and early July 2020. All three work orders state that the "job" to be completed is "warranty." Two of the work orders expressly state that Keystone authorized or will authorize the work. We therefore agree with Keystone that, because it provided the remedy it set out in its manual, the record does not show any genuine issue for trial about whether it breached its limited warranty.

The record also shows that the Mielkes did not take their RV to Tacoma RV for service until June and July 2020. It shows that Keystone provided warranty service at that time despite its one-year limited warranty having expired

8

during April 2020, the one-year anniversary of the Mielkes' purchase. The record does not show any genuine issue for trial about whether Keystone unreasonably delayed or refused to authorize warranty service so that its warranty failed of its essential purpose. The trial court properly dismissed the breach of warranty claim.

### B.      Chapter 46.70 RCW Claim

The Mielkes also claim that Keystone violated chapter 46.70 RCW because it "never disclosed any of the defects to the Mielkes prior to their purchase of the RV." We disagree.

An RV is a vehicle for the purposes of chapter 46.70 RCW, which regulates the distribution and sale of vehicles in Washington. RCW 46.70.011(12); RCW 46.70.005. A purchaser who has suffered loss or damage by reason of any act by a vehicle dealer has a cause of action under the chapter. RCW 46.70.027. Specifically, "any statement or representation with regard to the sale . . . of a vehicle which is false, deceptive, or misleading" is unlawful, as is a vehicle dealer's "fail[ure] to comply with the obligations of any written warranty or guarantee given by the dealer or manufacturer." RCW 46.70.180(1), (10). Chapter 46.70 RCW "shall be liberally construed" to prevent fraud and misrepresentation. RCW 46.70.900. A violation of chapter 46.70 RCW is a per se violation of the CPA. RCW 46.70.310.

The parties do not brief whether Keystone, an out-of-state RV manufacturer, is a vehicle dealer for the purposes of chapter 46.70 RCW. [9]

That chapter creates a limited private right of action:

> A retail purchaser . . . who has suffered a loss or damage by reason of any act by a dealer, salesperson, managerial person, or other employee of a dealership, that constitutes a violation of this chapter or applicable provisions of chapter 46.12 or 46.16A RCW may institute an action for recovery *against the dealer* and the surety bond as set forth in RCW 46.70.070.

RCW 46.70.027 (emphasis added). Thus, the statutory cause of action is, by its plain language, limited to an action "against the dealer." Keystone is the RV's manufacturer; the dealer is Tacoma RV, with whom the Mielkes settled. Consequently, we conclude that the Mielkes cannot state a direct cause of action against the manufacturer of their RV, Keystone, for violating chapter 46.70 RCW.

### C.     CPA Claims

The Mielkes allege both that Keystone engaged in deceptive and unfair conduct in violation of the CPA and that "Keystone's multiple violations of the ADA resulted in *per se* violations of the CPA." Keystone argues that the Mielkes cannot prove either a per se or direct violation of the CPA. We conclude the Mielkes have not raised a genuine issue for trial about whether any violation of the CPA, per se or non per se, caused their injuries.

---

[9] The parties also do not brief whether the Mielkes' chapter 46.70 RCW claim was timely brought. RCW 46.70.190 (one-year statute of limitations). Keystone stated at oral argument below that "the statute of limitations on the ADA claim is not the basis of Keystone's motion for summary judgment."

"To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986)). A per se violation of the CPA establishes the first three elements of the Hangman test. Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 794-95, 295 P.3d 1179 (2013). Thus, proof of causation is required for both per se and non per se violations of the CPA.

Because the causation element is required for any CPA claim, we may affirm dismissal of this claim based on the lack of a genuine issue on that element alone. To prove causation, a CPA plaintiff "must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 84, 170 P.3d 10 (2007).

Here, the Mielkes complained that they experienced respiratory symptoms and headaches from mold, mildew, and formaldehyde during the time they were living "full time" in their RV. Keystone's owner's manual devotes an entire chapter to indoor air quality and prolonged occupancy with a prominent warning that their RV's are "designed primarily for recreational use and short-term occupancy.":

11

**Chapter 3: Effects of Prolonged Occupancy and Indoor Air Quality**

Effects of Prolonged Occupancy

⚠ **CAUTION**

Your recreational vehicle was designed primarily for recreational use and short-term occupancy. Prolonged Occupancy can lead to premature component wear/failure and create conditions, which if not managed properly, may be hazardous to your health and/or cause significant damage to your recreational vehicle. These types of "Damage" are NOT covered under the Limited Warranty.

Immediately following this warning, the owner's manual states, "[Y]our RV is only a few hundred square feet" and "[t]he relatively small volume and tight compact construction . . . means that the normal living activities of even a few occupants (or animals) will lead to rapid moisture saturation of the air." Further, the manual warns, "Unless the water vapor is carried outside by ventilation or condensed by a dehumidifier, it will condense on the inside of the RV." The manual's next page includes recommendations from the Centers for Disease Control and Prevention (CDC) and the Environmental Protection Agency (EPA) to improve indoor air quality. The manual then provides "Tips to Avoiding Condensation" and warns, "Where There Is Moisture, There May Be Mold." Finally, the manual discusses "Formaldehyde & Recreational Vehicles" and explains that "[f]ormaldehyde is also an industrial chemical used in . . . the construction of recreational vehicles."

The Mielkes do not dispute the owner's manual's content. Instead, their deposition testimony is that they never read the manual. But "there must be some demonstration of a causal link between the misrepresentation and the plaintiff's injury." Indoor Billboard, 162 Wn.2d at 83. The Mielkes have not

12

proffered evidence to establish that, but for statements in an owner's manual that they admit they did not read, they would not have bought their RV, lived in it full-time, and suffered injuries from mold, mildew, and formaldehyde. Thus, we conclude that the evidence does not establish a genuine issue for trial about causation, as required to establish a CPA violation.[10]

## II. Denial of CR 11 Sanctions

The Mielkes argue that in Keystone's motion for summary judgment, Keystone and its lawyers made "false and misleading claims [that] were material to the trial court's decision to grant the motion." They claim the trial court erred by denying their request for CR 11 sanctions based on Keystone's "false claims."

---

[10] Because we determine there is insufficient evidence of causation, we need not reach the Mielkes' per se claims. However, we note that one such claim relies on an alleged violation of RCW 46.70.180(10), for failure to comply with an express written warranty. As discussed above, this claim fails.

As to the Mielkes' claim that Keystone's owner's manual is deceptive under the CPA, this court and the Ninth Circuit have concluded that Keystone's owner's manual is not deceptive because it does not mislead or misrepresent the dangers of mold and formaldehyde. Axon v. Freedom R.V., Inc., No. 38068-8-III, 2022 WL 1316283, (Wash. Ct. App. May 3, 2022) (unpublished), https://www.courts.wa.gov/ opinions/pdf/380688_unp.pdf, review denied, No. 100986-1 (Wash. Sept. 7, 2022); Cole v. Keystone RV Co., No. 21-35701, 2022 WL 4234958, at *1 (9th Cir. 2022) (unpublished) (agreeing with Axon and holding that Keystone's owner's manual "does not satisfy the CPA's first element" as to mold, formaldehyde, and prolonged occupancy). The plaintiffs in Axon also did not read their owner's manual. No. 38068-8-III at 4. While the Axon court's conclusion focused on the alleged deceptiveness of Keystone's owner's manual, the court also stated that "even were we to conclude otherwise, the Axons cannot prevail . . . because they failed to present facts sufficient to establish causation, an element on which they bear the burden of proof at trial." Id. at 18.

To the extent deception under chapter 46.70 RCW may be different from deception under the CPA, the Mielkes argue that Keystone "[f]ailed [t]o [p]roperly [d]isclaim" its liability for formaldehyde, mold, mildew, and prolonged occupancy under RCW 46.70.180(1) because "a disclaimer must be explicitly negotiated or bargained for and it must set forth with particularity the qualities and characteristics being disclaimed," as in Hartwig Farms, Inc. v. Pac. Gamble Robinson Co., 28 Wn. App. 539, 542, 625 P.2d 171 (1981) (citing Berg v. Stromme, 79 Wn.2d 184[, 196], 484 P.2d 380 (1971) (other citations omitted)). But the Mielkes' deposition testimony was that they did not talk to anyone at Keystone during the sales process; thus, there is no genuine issue of material fact as to their claim of deception in the form of failure to disclaim liability.

Keystone argues that misstatements, which it corrected, had no bearing on the

trial court's decision to grant its motion for summary judgment. We agree with

Keystone.

> CR 11(a) states
>
> The signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

> For a violation of CR 11, "the trial court '*may* impose . . . an appropriate

sanction, which *may* include an order to pay [the opposing party's reasonable

costs and attorney fees].'" Protect the Peninsula's Future v. City of Port Angeles,

175 Wn. App. 201, 219, 304 P.3d 914 (2013). But a trial court is not required to

impose sanctions for every violation of CR 11. Id. (citing Biggs v. Vail, 124 Wn.2d

193, 200, 876 P.2d 448 (1994)).

> Sanctions decisions are reviewed for an abuse of discretion. Wash. State

Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 338, 858 P.2d

1054 (1993). A trial court abuses its discretion when its order is manifestly

unreasonable or based on untenable grounds. Id. at 339.

Here, the Mielkes sought CR 11 sanctions against Keystone in the form of denial of the summary judgment motion, as well as an award of fees and costs.[11] The Mielkes' request for sanctions was based on six allegedly "false statements" in Keystone's summary judgment pleadings:

1. 'Keystone . . . directs consumers to bring the RV into an authorized Keystone dealer for service. *Plaintiffs repeatedly refused to do so . . . .' . . .*
2. '*Instead of simply bring their Raptor into an authorized dealer for repairs, Plaintiffs filed suit.*' . . .
3. '*Keystone's records indicate it only received a couple of emails from the Plaintiffs regarding their [RV] before they filed suit.*' . . .
4. '*Plaintiffs apparently ignored Keystone's request to bring their [RV] to an authorized dealership to address any warrantable concerns they were having.*' . . .
5. '*The Plaintiffs never responded to Keystone's email, never contacted Keystone again, and never brought their Raptor into an authorized dealer. Instead, the Plaintiffs ceased all communications with Keystone . . . .' . . .*
   '*The Mielkes refused to even bring their RV in for warrantable repairs and instead filed suit.*' . . . .

In support of its sanctions motion, the Mielkes submitted the declaration of a professor of law with expertise in legal ethics and legal malpractice, who opined that counsel for Keystone "did not comply" with "the duties of truthful and non-misleading pleadings" that require "formally withdrawing the false allegations and advising the [c]ourt not to reply on upon [sic] previously made false allegations."

As to one set of misstatements, in its summary judgment reply brief,

---

[11] The court asked counsel for the Mielkes, "[Y]ou're not suggesting that the [c]ourt would deny a valid CR 56 motion as a sanction. Correct?" Counsel for the Mielkes answered, "No, I am. I am making that request now."

Keystone acknowledged it had made an error in its initial motion:

> In its Motion, Keystone erred by stating Plaintiffs had not taken their unit to an authorized dealer for repairs. Keystone was referring to the period after its customer service team instructed Plaintiffs to take their unit to an authorized dealer for assessment and repair in October 2019, which was nearly eight months before Plaintiffs took their unit to Tacoma RV. This was an oversight that has no bearing on Keystone's performance under the Limited Warranty.

Then, at oral argument on summary judgment before the trial court, Keystone similarly conceded, "The Mielkes eventually t[ook] the[ir] unit to Tacoma RV, and Keystone agree[d] to reimburse Tacoma RV for those repairs." In its response to the Mielkes' motion for reconsideration, Keystone noted that it had corrected its initial mistaken assertions and "the Court was well aware at the time it entered its Order that the Plaintiffs had indeed brought their trailer into Tacoma RV for repairs." Thus, Keystone argued, while counsel for Keystone "highly regrets the mistaken assertion . . . , it is simply false for Plaintiffs to assert (as they have) that Keystone attempted to *knowingly* deceive the Court."

The second set of statements asserted as the basis for sanctions involves complaint letters the Mielkes allege they sent to Keystone. Keystone's reply brief stated:

> Plaintiffs refer to two letters allegedly sent to Keystone in December 2019 and January 2020. Keystone has no record of receiving these letters, but that is immaterial. Keystone had already instructed Plaintiffs on the procedure for obtaining warranty service. Moreover, it is notable that Plaintiffs made no mention of these letters in their discovery responses regarding all attempts they made to contact Keystone.

The Mielkes argued at summary judgment that Keystone lied by stating the Mielkes "only provided Keystone with two emails" about their RV's problems, and that the Mielkes "did not produce either of" their two letters to Keystone. At oral argument before the trial court, the Mielkes clarified that they produced only the December letter. But as to the other letter, "Keystone's claim that they have 'no record' of the Mielkes' letters is also objectively false" because, according to the Mielkes, six months before the Mielkes filed suit against Keystone, Robert provided a declaration in a separate case, attaching the Mielkes' January 2020 letter. Keystone "st[ood] by" its assertion that it had no record of ever receiving the Mielkes' December 2019 and January 2020 letters, but argued that the dispute was immaterial "[because] Keystone had already instructed [the Mielkes] repeatedly on the procedure for obtaining warranty service."

The trial court's denial of the Mielkes' motion for CR 11 sanctions was well within its discretion. Keystone corrected its misstatements regarding whether the Mielkes brought the RV in for service in its reply brief filed on October 11, before oral argument on October 29. The court's order granting Keystone's motion for summary judgment states that "[a]ll parties were given notice and an opportunity to respond" and specifically notes that it reviewed both the Mielkes' consolidated response to Keystone's motion and Keystone's reply in which it corrected its misstatements. Thus, the court was not misled as to the facts relevant to its decision on summary judgment. Further, whether Keystone received the Mielkes'

17

December 2019 and January 2020 letters was immaterial to the breach of warranty and all other claims.

The court applied the proper standard in deciding the summary judgment motion, stating, "Reviewing all materials submitted in the light most favorable to [the Mielkes], there is a lack of competent evidence supporting the essential elements of [the Mielkes]' claims against Keystone RV Company." The record does not support that Keystone's misstatements, which it later corrected, were material to the court's decision.

The trial court has discretion in deciding whether to impose sanctions and what sanction to impose. Protect the Peninsula's Future, 175 Wn. App. at 219; Fisons, 122 Wn.2d at 355-56 (the least severe sanction adequate to the purpose is among the "certain principles [that] guide the trial court's consideration of sanctions."). We conclude that here, the court did not abuse its discretion when it denied the Mielkes' CR 11 motion for fees, costs and sanctions in the form of denying a meritorious summary judgment motion.[12]

### III.    Fees on Appeal

An appellant may recover reasonable attorney fees if applicable law grants that right. RAP 18.1(b), (a). The Mielkes request attorney fees under RCW 19.86.090, RAP 18.1, and CR 11. Because we conclude the trial court properly

---

[12] In their reply brief, the Mielkes argue Keystone "must" be sanctioned and they cite seven cases for support. None of those seven cases were raised below; the Mielkes' CR 11 motion below left "the issue of sanctions to the [c]ourt." This court does not address matters raised for the first time in reply briefs, so we do not review this argument. RAP 10.3(c); Cowiche Canyon Conservancy, 118 Wn.2d at 809.

dismissed the Mielkes' claims and did not abuse its discretion by denying their CR 11 motion for sanctions and fees, we deny the Mielkes' request for fees on appeal.

     Affirmed.

_____
Chung, J.

WE CONCUR:

_____
Hazelrigg, A.C.J.

_____
Smith, C.J.